## Benjamin B. Morris v. William L. Hadley.

A court of Chancery will not award a new trial in a suit at law, on the ground of newly discovered evidence, when the proposed evidence only goes to contradict the evidence given on the trial in an immaterial point.

MORRIS *v.* HADLEY.

Nor will the Court of Chancery, on the ground of newly discovered evidence, decree a new trial to enable a defendant to make a wholly different defense from that which he made and failed in on the first trial.

*Heard July 6th.    Decided October 30th.*

Appeal from Oakland Circuit in Chancery.

The bill was filed for the purpose of obtaining a new trial in a suit at law, in which judgment had been rendered against complainant.

It set forth that, during the year 1855, complainant was a private banker and dealer in produce in Detroit: that in that year he made an arrangement with Nathan C. Parkhurst, of Pontiac, to buy wool 'for and with funds furnished by complainant: that Parkhurst had previously, from 1846 to 1851, been clerk for complainant in mercantile business in Pontiac, and from 1851 to October 1854, had been in the employ of complainant as agent in the purchase of produce at Pontiac: that in pursuance of the arrangement for 1855, he advanced and sent to Parkhurst from time to time money, for the purchase of wool, to the amount of $10.898, which was charged in account to Parkhurst, and received from Parkhurst from time to time consignments of wool, and when the account was closed, there was a balance due from Parkhurst, of $1883.57 : that on the first day of August, 1855, complainant went to Pontiac to settle with Parkhurst, and was there informed by the latter, that he had used some of complainant's moneys in making advances on flour to defendant Hadley; which flour Parkhurst had shipped in his own name to Van Sicklin & Co., commission merchants of Detroit, for sale: that complainant thereupon requested Parkhurst to give complainant an order on Van Sicklin & Co. for money in their hands: that Parkhurst then returned to complainant a certificate of deposite for $1100, sent to but not used by him, and paid complainant $250, and also gave him an order on Van Sicklin & Co. for $1000, all which sums were placed to the credit of Parkhurst, on complainant's books, by direction of Parkhurst, giving a

balance in his favor of $466,49; that afterwards, on August 7th, 1855, Parkhurst brought to complainant a check of Van Sicklin & Co. for $956,24, which at his request was also placed to his credit; that Parkhurst subsequently drew out the whole balance of his account, and overdrew to the amount of $601,84.

The bill further states that complainant never knew Hadley personally until the time of the trial at law; but is informed that, on October 5th, 1855, he called at complainant's office, and inquired of the clerk if Parkhurst had deposited any money there to his credit, and on being informed that he had so deposited $115, said Hadley drew the same out. That complainant heard of no claim by Hadley against him until the winter of 1857, when an action of assumpsit was commenced by him in the Oakland Circuit Court, against complainant, which was brought to trial in December, 1859: that on the trial, Hadley claimed to recover of complainant the two sums of $1000, and $956,24 so deposited by Parkhurst to his own credit: that Parkhurst was called as the sole witness to sustain the action, and testified as follows:

"I loaned to Benjamin B. Morris, for William F. Hadley, and as his agent, two sums of money: one of $1000, and one of $956,24. I loaned the money as the agent of William F. Hadley. I loaned the money to him, and he was to pay Hadley seven per cent. interest; I took no evidence of debt at the time: I supposed the money was placed to the credit of Mr. Hadley, on Morris' books, and I knew nothing to the contrary until I returned from Connecticut, the sixth day of October following; I loaned the money about the first of August, 1855; I never drew the money, or on account of the money loaned; I did not know the money was placed to my credit, and did not hear of it until I was informed if it by Mr. Howard at the time I returned from Connecticut, the sixth day of October following: I never drew any of the money,

nor any money on account of it; the money was Hadley's money, and Morris knew it at the time it was loaned to him; I negotiated the loan with him as the agent of Hadley, and he, Morris, knew it."

The bill further states, that no further evidence was produced on the trial on behalf of Hadley; that complainant had no evidence to controvert it, and was without any evidence in his power, control or knowledge, to bring home to said witness the knowledge and to establish the fact that the said sums were deposited by him to his own credit, and on this evidence the jury rendered a verdict for complainant for the two sums and interest, amounting to $2,959,50, upon which verdict judgment was rendered December 31, 1859.

The bill then states that the testimony of Parkhurst was false and perjured; that complainant had frequently searched, without success, among his papers before the trial for letters or other papers from Parkhurst, showing that said moneys were deposited by Parkhurst to his own credit, but in April, 1860, he accidentally came across, among papers labelled "orders," and out of the proper place for the same, the following letter from Parkhurst to Enoch Howard, a clerk in complainant's banking office at the date thereof:

"Pontiac, September 13, 1855.

E. Howard, Esq.—*Dear Sir:* Mr. Hadley was here to-day, and wanted $300, and I got it for him of Mr. Weeks, and I hope you will send out the amount this morning by Mr. Norris. You will see, by looking on the books, that Mr. Morris got of Van Sicklin & Co. one thousand dollars, and it was credited to me. He has got some flour here, and sixty or seventy ground, which I shall sell, and we can have the use of all his money, more or less; all the fall, and it won't do to disappoint him. He is a miller, and rich, and will do a large business this fall and winter, and if we are prompt with him, can

9 Mich.—T

use his money. I suppose Mr. Morris has not yet got back; I have not heard of it, at least. I am beginning to sit up now; have sat up nearly all day; hope soon to be able to go to Detroit, but I tell you I have had a hard time. Don't fail to send the funds, for I tell you I would rather walk clear in there *barefoot*, than to disappoint him. If you can sell flour, I can send it to you now, and every day.

Yours, ever,     N. C. PARKHURST."

The complainant then states that at the time of the trial he had no recollection of said letter, which he claims is material to the issue in said suit at law.

He claims that Hadley obtained the judgment by fraud; he states that Parkhurst has since been informed against for the perjury committed on said trial, and is now awaiting trial; and he prays that the judgment rendered against him in said suit be set aside, and a new trial decreed.

Hadley answered, denying fully the case made by the bill with respect to the deposit, claiming that the money was loaned by Parkhurst to Morris, as Hadley's agent; denying that Parkhurst's testimony with respect thereto was untrue, and claiming the judgment as equitably due. Replication was filed to this answer, and considerable testimony taken which it is unnecessary to set forth here.

The Circuit Court dismissed the bill, and complainant appealed.

*T. J. Drake* and *A. B. Maynard*, for complainant.

*M. E. Crofoot* and *M. L. Drake*, for defendant.

MANNING J.:

The bill is for a new trial on the ground of newly discovered evidence since the rendition of the judgment at law, and for fraudulently obtaining the judgment by false testimony. The latter is not sustained by proof, and

the newly discovered evidence is Parkhurst's letter of the 13th September, 1855. This letter shows Parkhurst was mistaken, when he stated on the trial that he did not know the money was placed to his credit until the 6th of October. In giving his evidence, he said he supposed it was placed to the credit of Mr. Hadley, on Morris's books, and knew nothing to the contrary, until he returned from Connecticut, on the 6th October. The letter shows he must have known it as early as the 13th September preceding. But the discrepancy between his letter and the evidence is immaterial, except that it shows he was mistaken as to time. It does not disprove the only material fact in issue on the trial, namely, that Parkhurst, as Hadley's agent, lent the money to Morris; that he took no evidence of the debt at the time, and supposed Hadley was credited with it on Morris's books. In another particular, however, the letter would seem to contradict his evidence. He stated on the trial that he had not drawn any of the money, or on account of it. In his letter, which is dated at Pontiac, he says: "Mr. Hadley was here to-day, and wanted three hundred dollars, and I got it for him of Mr. Weeks, and I hope you will send out the amount this morning by Mr. Norris. You will see by looking on the books, that Mr. Morris got of Van Sicklin & Co. one thousand dollars, and it was credited to me." From this, it would seem he not only knew the $1000 had been credited to him, but that he intended to draw against it; otherwise why did he make mention of the $1000, got by Morris of Van Sicklin & Co.? If Morris's defense had been, that he had had the money of Hadley through Parkhurst, and that he had afterwards repaid the whole or a part of it to Hadley through the same channel, the letter in question would be material, with evidence showing the $300 had been sent by Norris, to show Parkhurst had drawn that amount for Hadley. But there is no evidence the $300 were sent by Norris to Parkhurst, except Morris's books, which are not

evidence of it against Hadley. This, however, is not the only or most fatal objection to granting a new trial on the ground the newly discovered evidence shows the judgment is for too large a sum.

The theory of Morris's defense on the trial was, that he had not had any money of Hadley; that the money he had of Parkhurst was Parkhurst's money, and not Hadley's. This is wholly inconsistent and repugnant to payments to Hadley through Parkhurst. A man can not pay what he never owed. And in applying for a new trial, a defendant who has not been fraudulently misled by his adversary in making his defense (of which there is no pretence in the present case) will not be permitted to change that defense. In other words, having set up one defense and failed in it, a new trial will not be awarded to enable him to make a wholly different defense, and one which might have been, but was not, made on the trial.

On the issue made on the trial, the letter of the 13th September makes more for Hadley than against him. It by no means shows the money was Parkhurst's and not Hadley's. The contrary, we think, is fairly to be inferred from its language. It speaks of Hadley as one known to Morris—known to him through business transactions probably, as Morris says he was not personally acquainted with him—and of the $300 Hadley wanted, as money belonging to him. And after stating Hadley had some flour at Pontiac, says, "which I," (Parkhurst) "shall sell, and we can have the use of all his money, more or less, all the fall, and it won't do to disappoint him. He is a miller, and rich, and will do a large business this fall and winter, and if we are prompt with him, can use his money." Who is meant by "we," is obvious, as the evidence discloses the fact that Parkhurst for many years had been Morris's clerk, and had that season, although not then his clerk, been purchasing wool for him at Pontiac,

and had been entrusted with a large sum of money for that purpose by Morris.

Although the letter of September does not fully square with Parkhurst's evidence, we do not think, as newly discovered evidence or otherwise, it is of such a character as to call for the interposition of a court of equity. The decree of the court below is affirmed, with costs.

The other Justices concurred.