JOHN G. STUART, *et al.*, v. FT. SCOTT WATER COMPANY.

EASEMENTS — *One or All, Usable.* Under a contract between P. and S., where P. was required to pay, on his part, the sum of $150, which he paid, and was not required to do anything more, and in consideration of such sum he was granted various privileges by S., among which was the privilege of digging and trenching in and channeling out the bed of the Marmaton river at a certain place, for the purpose of furnishing a water supply to his water-works for the city of Fort Scott, *held*, that P. might exercise the privilege of so digging and trenching in and channeling out the bed of the Marmaton river, without exercising all of the other privileges granted to him by the contract.

*Error from Bourbon District Court.*

INJUNCTION, brought by *The Water Company* against *Stuart* and another. Trial by the court at the December Term, 1883, and finding and judgment for the plaintiff. The defendants bring the case to this court. The facts appear in the opinion.

*J. D. McCleverty*, for plaintiffs in error.

*Blair & Perry*, and *A. A. Harris*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced by the Fort Scott Water Company against John G. Stuart and M. C. Stuart, to perpetually enjoin them from attempting to prevent the plaintiff from channeling out the Marmaton river so as to let the water from above run down to its water-works. The defendants own the land through which the Marmaton river at this place passes, but the plaintiff claims to have an ease-

ment therein, by virtue of the following written contract, to wit:

" For and in consideration of the sum of one hundred and fifty dollars, payment of which is hereby acknowledged, we, Mrs. M. C. Stuart and John G. Stuart, of Fort Scott, Kansas, jointly and severally grant and lease unto P. B. Perkins and assigns, possession of and the right and privilege of establishing a source of water supply for the water-works of Fort Scott from the Marmaton river, the said supply being situated upon section thirty-six, township twenty-five, range twenty-four east, the right to trench, lay down and maintain water-pipes and necessary appurtenances for the said purposes, for utilizing the waters of the Marmaton river to the best advantage for a water supply for the said purposes, for the full term and time for which said pipes and appliances may be used for the aforesaid purposes, more fully detailed in the following :

" *Firstly*, The right-of-way and privilege of laying and maintaining water-pipes from or near the west bank of the Marmaton river, in an easterly direction to the east line of Blackett estate, the way of the pipe-line being along the present wagon-road, which commences at or near the west bank of the Marmaton river, near the gas well, and running easterly between the location of the house and barn, to the Blackett land.

" *Secondly*, The right and privilege of erecting a stone-and-cement dam across the Marmaton river from bank to bank, east and west, the said dam situated north of the gas well not to exceed fifty feet, the height of said dam not to exceed two and one-half feet in height above the river-bed at the point above named. The up-river side of the dam may be filled with gravel, to the top of the said dam, for filtering purposes.

" *Thirdly*, The right and privilege to sink down and maintain necessary wells, not exceeding ten feet in depth, upon the up-river side of the said dam, but not in any manner to interfere with or injure the present fish dam.

" *Fourthly*, The right and privilege of cutting down and channeling out the ripples or bars of the stream-bed all above the present fish dam to our west section line, or the Drake land, and to erect and maintain and operate gates and appliances 'necessary, by which the waters from the long draw or pond of the Marmaton may be drawn off and allowed, by means of the river-bed or channel, to percolate or flow down to the dam before described, thereby insuring more fully the quantity and quality of the water supply, but said operators are not to injure by said operation the cultivated land.

"*Fifthly,* The right and privilege of maintaining the purity of the water supply against the occupants of the premises or other persons in any manner polluting the said waters of said river by reason of dead animals or filth of any kind, or the willful disturbance or destruction of the said appliances or any part thereof—all for the said purposes and manner as hereinbefore described.

"In witness whereof, we hereby affix our signatures, this — day of May, 1882.                 M. C. Stuart.    [L. S.]
                                 John G. Stuart.   [L. S.]"

This contract was duly acknowledged by the makers thereof before a notary public on May 8, 1882, and was duly filed for record in the office of the register of deeds on May 10, 1882, and was duly assigned by the said P. B. Perkins to the present plaintiff, the Fort Scott Water Company, on July 10, 1882.

It is admitted by both parties that their rights in the present action are governed entirely by the foregoing contract.

The action was tried before the court, without a jury, and the court found in favor of the plaintiff and against the defendants, and rendered a judgment perpetually enjoining the defendants from interfering with the plaintiff in digging and trenching in and channeling out the Marmaton river above the fish dam and to the west line of the defendants' land, so long as it did not interfere with or injure the defendants' cultivated land; and of this judgment the defendants below, as plaintiffs in error, now complain.

Is this judgment erroneous? We would think not. It simply permits the plaintiff below to exercise and enjoy what it has a right to exercise and enjoy under the fourth subdivision of the foregoing contract; and no sufficient reason, in our judgment, has been given why the plaintiff should not exercise and enjoy these privileges.

It is claimed, however, that the plaintiff below has not performed all that it was required to perform under the contract. This, we think, is certainly a mistake. It is true that it has not performed all that it had a right to perform under the contract, but it has performed all that it was *required* to perform

Stuart v. Fort Scott Water Co.

by the contract. Neither the plaintiff nor its assignor signed the contract, nor was either *required* to perform anything under it, except to pay to the defendants the sum of $150; and this the plaintiff's assignor did when the contract was executed. This sum was the sole consideration on the one side, and the privileges mentioned therein were the only consideration on the other side; and the plaintiff's assignor completely performed on his and its side by paying such consideration. All the matters and things set forth in the contract, and supposed by the defendants to be burdens imposed upon the plaintiff's assignor and his assigns, are not burdens at all, but are merely privileges granted to the plaintiff's assignor and his assigns, and are such privileges as the plaintiff's assignor or his assigns, including the present plaintiff, can accept or refuse, as he, they or it may choose. The plaintiff may accept a portion of such privileges and refuse the rest. It is perhaps true that there are some limitations imposed upon the exercise and enjoyment of some of these privileges; but if there are, these limitations do not authorize the imposition of still other limitations which the parties themselves did not choose to impose; and certainly none of the limitations actually imposed by the parties will prevent the plaintiff from digging and trenching in and channeling out the bed of the Marmaton river above the fish dam for the purpose of furnishing a water supply to its water-works for the city of Fort Scott, so long as the plaintiff does not interfere with or injure the defendants' cultivated land. It does not appear that the exercise of any one of the privileges granted is a condition precedent to the exercise of any other of the privileges granted; but still it is admitted that the plaintiff has already constructed its water-works, and needs water to supply them, and that this digging and trenching in the Marmaton river are for the purpose of furnishing a supply to its water-works, and these water-works are for the purpose of furnishing water to the city of Fort Scott.

Perceiving no error in the judgment of the court below, such judgment will be affirmed.

All the Justices concurring.