THE HOUSTON, EAST & W. TEX. R'Y CO. v. M. E. ADAMS ET AL.

(Case No. 1895.)

1. DAMAGES — RAILWAY COMPANY.— In a suit for damages for injuries done to land by the construction of a railway road-bed, without first acquiring a right of way from the land-owner, evidence of such damage to the entire tract is admissible as would have been permitted had the proceedings been instituted to condemn the land in the manner pointed out by the statute.

2. SAME — PLEADING.— See statement of case for pleading, with reference to damage resulting to crop from the negligent manner in which cattle-guards were constructed by a railway, held sufficient.

3. SAME — DAMAGES.— The measure of damages against a railway company, which, as a naked trespasser upon inclosed land, so uses its possession as to prevent the making of crops, is not the supposed value of the crops that might have been made, but the rental value of the land, as also the value of fences destroyed, or other specific injury directly inflicted.

4. PRACTICE — EVIDENCE.— If evidence be admissible on any one of several issues presented in the pleading, it would be error to exclude it on account of its not being admissible on some other issue.

5. PRACTICE — BILL OF EXCEPTIONS — EVIDENCE.— When the matter contained in the answer of a witness is admissible on some issue presented by the pleading, though the manner of answering might be subject to objection, as where the witness substitutes opinion for facts, the supreme court will not for that cause reverse the judgment, when the bill of exceptions fails to indicate the objection to either question or answer.

6. DUTY TO PROTECT ONE'S PROPERTY FROM DAMAGE.— While the general rule is that one should ordinarily protect himself against the injurious consequences of the wrongful act of another, when it can be done with ordinary effort, and without great expense, this rule does not apply to a landowner whose crops are destroyed by the failure of a railway company to erect and keep in repair proper cattle-guards. In such case the statute makes the company liable for resulting damage. (R. S., 4244. Following T. & S. L. R'y Co. v. Young, 60 Tex., 201.)

7. SAME — RAILWAY COMPANY.— When a railway company secures a right of way across the land of the citizen, it has its option either to fence its right of way and pay for it, or rely on cattle-guards where it crosses an inclosure. If it relies on cattle-guards, and so negligently constructs them that the crops of the land-owner are destroyed by cattle, the company cannot shield itself from liability on the ground that the land-owner was guilty of contributory negligence in not keeping up cattle-guards or building a fence on both sides of the company's right of way.

8. DAMAGES.— A naked trespasser who erects on the land fixtures which constitute a part of the realty, and who afterwards removes them without the consent of the land-owner, is liable in damages for their value.

9. SAME — DAMAGE TO CROPS.— When, by the failure of a railway company to erect and keep in repair cattle-guards, the growing crops of the land-owner are destroyed by cattle, the company is liable in damages for their value at the time of their destruction.

APPEAL from Polk. Tried below before the Hon. Edwin Hobby.

This cause was formerly before the supreme court on appeal (58 Tex., 476).

After the decision of supreme court on former appeal, plaintiffs (appellees), on the 1st day of December, 1883, filed their first amended supplemental petition, excepted specially to defendant's original answer, filed January 4, 1883, and "by way of supplemental petition and replication," in substance alleged that the conveyance of fifty yards right of way to defendant, by plaintiffs, as set up by defendant's answer, if ever made (which was denied), was made not upon the consideration expressed in said deed, but upon another and different consideration; that said conveyance was obtained by defendant from plaintiffs by means of false, deceitful and fraudulent representations, pretensions and promises wilfully made by defendant to plaintiffs with intent of defendant to deceive and defraud plaintiffs; that plaintiffs believed and relied upon them, and were by them induced to sign an instrument in writing, the terms of which conveyed to defendant a fee-simple title to a fifty yards right

of way across plaintiffs' homestead tract of land; that the true consideration of such conveyance was that defendant should establish a depot at Moscow, in Polk county, upon plaintiffs' homestead tract of land, at a point "northerly from defendant's present depot at said town, and —— varas therefrom, then pointed out by the parties and understood by them;" that this was the real consideration and not expressed in said deed, because plaintiffs placed confidence in the representations by defendant; that defendant failed to comply with its contract and representations and promises aforesaid to plaintiffs, and did *fraudulently, in violation thereof*, erect, build and establish its depot at Moscow, at a different place from the place contracted with plaintiffs to build the same, and "has, to this day, maintained its depot at said different place;" that if defendant had established and maintained its depot at the point it agreed to establish and maintain it with plaintiffs, as aforesaid, then plaintiffs would have been benefited thereby by the peculiar location and the enhanced value of their property, in, to wit, the sum of $5,000; that defendant, disregarding its contract with plaintiffs, after it had obtained the right of way deed fraudulently changed its line of road and established its depot so as to damage instead of benefit plaintiffs; "therefore plaintiffs say that the consideration for which said right of way deed was given has failed, and defendant has fraudulently violated the material part of its contract with plaintiffs."

Plaintiffs further alleged that the right of way deed did not convey a right of way or easement, but was by its terms a fee-simple deed; that the land claimed by defendant by virtue of it was a part of plaintiffs' homestead, and was such at the time the deed bore date; that plaintiff M. E. Adams, wife of plaintiff John H. Adams, never privily acknowledged that deed as having been executed as the laws require for conveyance of the homestead; that M. E. Adams always refused to acknowledge that deed unless defendant would comply with its contract with plaintiffs. Plaintiffs prayed that the deed be annulled and canceled.

The allegations in this part of the said pleading seem to have been established by the evidence.

The court below seems by its charge to have disregarded the claim for the cancellation of the deed.

Plaintiffs further alleged in substance that, since the institution of this suit, defendant had entered upon and removed from plaintiffs' homestead tract of land and appropriated to defendant's own use two houses, fixtures on the land, the property of plaintiffs, of

value $500, and two plank fences and posts thereon, value $200, for which damage was claimed.

That by reason of the wrongs and trespasses of defendant upon plaintiffs' said premises they were damaged by defendant in the year 1881, to wit: to oat crop, $480; to pasturage, $75; by defendant's appropriation and destruction of plaintiffs' rails, $22.50. That by reason of defendant's wrongs and trespass on the premises, etc., damage in 1882 to plaintiffs, by being by defendant deprived of making a crop on their said farm, by reason of defendant's possession of the same and destruction of plaintiffs' fences, $1,2.0. In same way in 1883, $1,100.

That in case the court should hold defendant had the right to take possession of right of way, then plaintiffs alleged that, by reason of defendant's negligence and want of care in taking possession of same, and in constructing its road over plaintiffs' premises, plaintiffs were damaged $5,000. That is to say, defendant, in taking possession of the right of way, destroyed plaintiffs' fences — value $200. Defendant neglected and refused to build stock gaps and cattle-guards at the entrance to and exit from plaintiffs' farm, through which said railway runs, as alleged in plaintiffs' original petition, and had so neglected and refused to erect such stock gaps and cattle-guards "to this day," to plaintiffs' damage $2,000. Defendant having seized and taken possession of plaintiffs' farm neglected and refused, and still neglects and refuses, to fence in the right of way, so as to protect plaintiffs' farm from stock and the traveling public, whereby plaintiffs had been prevented from making a crop on or using the farm since defendants entered the same, to damage of plaintiffs each year $1,200. That when defendant took possession of plaintiffs' said farm, defendant, with great negligence and intending to injure plaintiffs, tore down plaintiffs' fences and allowed stock, cattle, hogs, etc., to enter plaintiffs' farm, garden, orchards and inclosures, and greatly damage the same by breaking down the trees and depredating on plaintiffs' lands, inclosed crops, orchards and gardens, to plaintiffs' damage $2,000. Allegations of appropriation of rails, making roads and thoroughfares through plaintiffs' inclosed lands, etc., damage $500. That defendant seized and took possession of lands of plaintiffs not on the right of way, and built houses thereon without plaintiffs' consent, but "well knowing the facts in plaintiffs' pleadings, in this suit set forth, and that plaintiffs claimed the land on which said buildings were erected." That since the institution of this suit, defendant has taken down and removed said houses, to plaintiffs' damage as alleged.

Verdict and judgment for the plaintiffs for $1,000.

*E. P. Turner,* for appellant, on measure of damages, cited: Sabine & East Texas R'y Co. *v.* Joachimi, Supreme Court, Galveston term, 1883; W. & W. Cond. Reps., secs. 298, 482 and 1139; Missouri Pac. R'y Co. *v.* Cox, Tex. Law Review, May 13, 1884, No. 3, vol. 19, p. 304; Foote *v.* Merrell, 54 N. H.; Gresham *v.* Taylor, 51 Ala., 505; 2 Thompson on Neg., 1262, and cases cited; Sedg. on Dam., 34 and 82 *et seq.*

That the land-owner should have taken steps to protect himself against threatened damage, he cited: Missouri Pac. R'y Co. *v.* Cox, Tex. L. Rev., vol. 3, No 19, p. 389, May 13, 1884; R. S., art. 4243; Field on Damages, secs. 21, 128, 129 and 130; Hassa *v.* Junger, 15 Wis., 598; Loker *v.* Damon, 17 Peck, 284; Thompson *v.* Shattock, 2 Met., 615; Hamilton *v.* McPherson, 28 N. Y., 72; Davis *v.* Fish, 1 Greene (Iowa), 407; Harmon *v.* Berkley, 1 Strobh. (S. C.), 548; Mather *v.* Butler County, 28 Ia., 253.

*Hill & Corry,* for appellees, on the proposition that the plaintiffs were entitled to set up, by supplemental petition, and recover damages for all the wrongs, fraud and negligences of the company, cited: Culbertson *v.* Cabeen, 29 Tex., 254; Sedgwick on Damages (6th ed.), bottom of p. 118, citing Wilcox *et al. v.* Ex'rs of Plummer, 4 Pet., 172 and 182; Field on Damages (2d ed.), p. 48, sec. 51; also as to remote and proximate cause, see Field on Dam., pp. 528, 529, and notes, citing Fleet *v.* Toledo, P. & W. R. Co., 59 Ill., 349 (overruling and sharply criticising Ryon *v.* N. Y. Central R. R. Co., 35 N. Y., and Penn. R. R. Co. *v.* Keer, 62 Pa. St.); Kellogg *v.* Chicago & N. W. R. R. Co., 26 Wis., 223; Pierce on Railroads, pp. 216, 230, 310, 311, 322, 323.

That it was a continuing duty of the company to protect the plaintiffs' field with proper cattle-guards, down to the filing of the last pleading claiming damages, they cited: R. S., arts. 4240, 4242, 4244; H. & G. N. R. R. Co. *v.* Meador, 50 Tex., 86, and syllabus, sec. 3; Tex. & Pac. R. R. Co. *v.* Dudley, W. & W. Ct. App. Civil Cases, p. 271, sec. 540.

There being evidence to sustain the verdict and judgment, they must be affirmed, citing: Texas & St. Louis R'y Co. *v.* Willis, Roberts & Son, Tyler Term, 1882; Willis *v.* Lewis, 28 Tex., 191; Guerin *v.* Patterson, 55 Tex., 127; Stroud *v.* Springfield, 28 Tex., 676; Latham *v.* Selkirk, 11 Tex., 321; Ables *v.* Donley, 8 Tex., 336; 51 Tex., 553; 1 Tex., 340; 7 Tex., 587; 22 Tex., 42; 23 Tex., 83; 27 Tex., 241; 35 Tex., 28.

STAYTON, ASSOCIATE JUSTICE.— The petition must be taken as an entirety in determining whether the demurrers were properly overruled.

The petition denies that the right of way through the land of appellees was ever acquired by the appellant, and this became an issue in the case; and we may now say, without further considering it, that in view of this issue the court did not err in admitting such evidence of damage to the entire tract of land as would have been admissible had the proceeding been one to condemn the land through a procedure provided by the statute.

The charge of the court correctly submitted the law on such an issue to the jury, and their finding, fully supported by the evidence, was in favor of the appellant, and this renders it unnecessary to further notice that branch of the case; for the appellees took nothing under it.

The averments in reference to the damage resulting from injury to an oat crop, orchard, pasture and the destruction of fences relate evidently to injuries which resulted from the tearing down of the fences of the appellees at the time the railway company entered the land, and from the failure of the appellant so to fence and guard its way where it entered and left the premises of the appellees that animals could not enter through it and destroy the property of appellees.

These averments were proper, made with reasonable certainty, and sought as damage the value only of the property or right at the time of its destruction.

The petition, having alleged that the appellant was a naked trespasser for the years 1882 and 1883, sought to recover damages on the ground that by reason of the wrongful possession of the land appellees had been prevented from making crops on the lands during the years named.

The averments in relation to these matters were of a general nature, but considered altogether were sufficient to show that the appellees would be entitled to the mesne profits of the land while in the possession of the appellant, which would embrace the annual rental value of the land so illegally held, together with any injury resulting from the destruction of fences or other things, but would not embrace the real or supposed value of crops which might have been raised on the lands during those years by the appellees but for the alleged wrongful possession by the appellant. This branch of the case, however, in view of the fact that the appellant had the right of way over the land, becomes of but little importance, except in so far as it may appear that some part of the land of the appellees was held by the appellant without right.

In addition to the issue presented by the pleadings, as already

stated, an issue was raised whether, conceding that appellant was entitled to the right of way through the land of appellees, that right had been carefully used. It was alleged that it had not; and that, by the negligent construction of the road, and failure to erect cattle-guards, and keep them in order where the railway entered and left the inclosed premises of appellees, his field had been left open to stock, whereby he was prevented from using it.

The petition further claimed that the appellant, for depot and like purposes, outside of the right of way, and without the consent of the appellees, had, on the land of appellees, erected houses which without their consent the appellant had removed since the institution of this suit. The value of these were stated and proved.

Much of the confusion in this case arises from the several issues presented, in reference to one of which evidence would be admissible which would not be on another. The court below, as should be done in such cases, separated the several issues presented, and informed the jury as to the rights of the parties under each, and as to the facts necessary to maintain the one and the other.

If the evidence offered was admissible on any issue presented, it would have been error to have excluded it because not admissible on all the issues.

The matters assigned as error in the first, second, third and fourth assignments relate to the admission of evidence.

The grounds on which the questions and answers referred to in the bills of exceptions and assignments were objected to are not made to appear in the bills of exceptions, and if admissible for any purpose, on any issue in the case, the action of the court below will not be revised, however objectionable the manner of interrogating the witnesses may have been.

The questions addressed to the witness Adams were intended to and did elicit answers which were admissible on the first and second issues in so far as the matters to which the answers related were concerned; while in the manner of statement, substituting to some extent the opinion of the witness for a statement of facts from which the jury could draw their own inferences, the answers may have been subject to objection. The bills of exception not showing that the questions and answers were objected to on the ground of the manner in which the questions were asked and the answers given, the matter of the answers being admissible, the ruling of the court below in this respect will not be revised.

The same may be said as to the ruling of the court in regard to the question propounded to the witness Jones.

There was evidence tending to show that up to the time of the trial the appellant had not so secured its way at its entrance to and exit from the field of appellees as to prevent the passage of stock into the field; and from the verdict the jury must have believed this to be true.

It is, however, claimed that if this be true, then the appellees are not entitled to recover, for the reason that they might have erected fences through the field on each side of the right of way and thus have avoided loss.

The duty of a party to protect himself from the injurious consequences of the wrongful act of another, when it can be done by ordinary effort or moderate expense, is fully recognized, but it is by no means easy in every case to determine when the rule is applicable.

Under the statutes in force in this state, it is the duty of a railway company " whose railway passes through a field or inclosure . . . to place a good and sufficient cattle-guard or stop at the points of entering such field or inclosure, and keep them in repair." R. S., 4240.

The statute further declares that, " Should any such company neglect to construct the proper cattle-guards and stops and keep the same in repair as required by law, such company shall be liable to the party injured by such neglect for all damages that may result from such neglect, to be recovered by suit in any court having jurisdiction." R. S., 4244.

The permission given to the land-owner through whose inclosed land a railway runs, to enter upon the way and construct cattle-guards and stops in cases in which the railway company has failed to do so, and the obligation which flows from this permission, was considered in the case of T. & S. L. R'y Co. v. Young, 60 Tex., 201, and it was there held that the land-owner was not compelled to exercise this permissive right or otherwise be considered as guilty of contributory negligence.

We are of the same opinion now.

If the owner cannot be required to erect or repair cattle-guards or stops, which include such barriers as extend across the entire width of the right of way, at places of entrance, can he be compelled, when the railway company fails to erect proper cattle-guards or stops, to build fences at the outside of the right of way on both sides of a railway through his entire inclosure, or otherwise be denied a recovery for an injury which would not result but for the failure of a railway company to discharge a plain statutory duty?

We are of the opinion not; partly on other grounds than those referred to in the case above cited.

When a railway seeks the right of way through inclosed lands, through condemnation, the cost of such fences as will necessarily have to be built to enable the owner to use his land after the railway is built will be taken into consideration in estimating the damage; but when fences will not have to be built and the land will be fully inclosed without additional fences, if the right of way at entrances be fenced, then this does not enter into the estimate, but the law makes it the duty of the railway company to keep this part of the inclosure safe, and on this the owner of the land does and may rely.

In cases in which the right of way is acquired by agreement, with or without compensation paid, other than such benefits as may result from the construction and operation of the road, the same things may be supposed to influence the parties and to form the consideration to the contract as may be taken into consideration by a jury or board in estimating damages. In either case the parties rely upon a compliance by the railway company with the plain provisions of law, which, in the one case as in the other, will render unnecessary, for the protection of the land-owner, the erection of fences on each side of the way through the entire inclosure.

The parties contract in view of an implied promise on the part of the railway company that it will do what the law requires it to do, and not in expectation that the railway will violate its duty.

That the land-owner might recover the cost of erecting the necessary fences is no answer to the breach of contract by which the railway promised to render the erection of such fences unnecessary.

In case of a railway running through a field, by the erection of fences on each side of the way, separating one part of a farm from another, an inconvenience and injury may arise to the land-owner which was never anticipated at the time the right of way was obtained; and thus a burden be imposed which would not exist did the railway simply perform its duty, raised by contract and imposed by statute.

If the land-owner understood that such fences would have to be erected, then in granting the right of way by agreement, he would take into consideration all the inconveniences to arise and injuries to result from the severance of his farm, not only by the roadway, over which he may ordinarily pass so that he does not interfere with the right of the railway in some respect to safely use it, but also the severance which is to result from the erection of two fences, and

he would require such additional compensation as would compensate him for the inconvenience or injury thus increased.

We are therefore of the opinion that as a condition to his right to recover, in cases of injury resulting from the failure of a railway company to place and retain secure cattle-guards and stops at its places of entrance into inclosed lands, the land-owner is not compelled to erect fences on the sides of a right of way, even though this might be done at the expense of the railway company.

It only remains to inquire whether the verdict and judgment are so clearly excessive as to require the judgment to be set aside. The judgment is for $1,000.

There was evidence tending to show the following items of injury: Oat crop destroyed, $200; orchard destroyed, $300; loss of pasture, $75; rails destroyed, $22.50; rent of land $400. This last item, however, embraces the year 1881, and damage for the destruction of crops and other injuries resulting in that year are embraced in the preceding items; therefore, this entire item could not be allowed.

There is evidence tending to show that the appellant took possession of and used land belonging to the appellees, outside of the strip embracing the right of way; and there is evidence tending to show that on this land a house and other improvements were made without the consent of the appellees, and that, pending the suit, a house of the value of about $425 was removed without the consent of the land-owner.

For this, damage was sought under the averments of the supplemental petition, which, if found to be true, would entitle the appellees to a judgment for the value of the house made a part of the realty by a trespasser, and subsequently removed without the consent of the owner.

Considering all the items which the jury could properly take into consideration in estimating the damage, it cannot be said that the verdict is excessive, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered February 6, 1885.]