Opinion adopted March 2, 1888.

No. 2461

## GULF, COLORADO & SANTA FE RAILWAY COMPANY v. J. C. ROWLAND.

1. RAILWAY CROSSINGS.—In the absence of any statutory provision, the owner of inclosed land who had granted the right of way across it to a railway company by deed, must be held entitled to such crossings over the railway track as are reasonably necessary for the use of the premises enclosed. This right exists whether the right of way be conveyed by deed or is secured by condemnation. In either case the obligation does not rest on the railway company to construct crossings at its own expense. It will be presumed that when the right of way was secured the railway indemnified the land owner for the expense of constructing and keeping in repair all necessary crossings.

2. RAILWAYS.—The power of the Legislature to require railways to fence their track has been universally upheld, and has been expressly affirmed by this court.

3. CASES REVIEWED.—Texas Central Railway v. Childress, 64 Texas, 346, reviewed.

4. RAILWAY CROSSINGS.—The right of the Legislature to require railway companies to construct crossings at the intersection of public highways and the maintenance of cattle guards is clearly within the scope of the police power, the exercise of which is impliedly reserved in granting the corporate franchise, and is not within the prohibition of the federal constitution against State laws which impair the obligation of contracts. But no implied reservation of power in the State exists to compel a railway which has fenced its track in obedience to previous laws to construct crossings within inclosures for the benefit and convenience of the owners of such inclosures.

5. SAME.—The right of the Legislature to amend the charter of a corporation can not be construed as placing them beyond the pale of those constitutional provisions which guard the rights and property of natural persons against the encroachments of legislative power.

6. CASES REVIEWED.—Commonwealth v. Essex Company, 73 Massachusetts, 253, and Coiners v. Water Power Company, 104 Massachusetts, 446 cited and reviewed.

7. CASE DISTINGUISHED.—This case distinguished from the case of Railroad Company v. Thorpe, 27 Vermont, 140.

8. RAILWAY CROSSINGS.—A legislative act passed after a railway company has compensated the owner of land for the right to cross it, which requires the company to construct crossings of its track within his inclosures, can not be enforced. It would be otherwise when the right of way is obtained after the passage of such a law; in the latter event the right of way will be presumed to have been acquired with reference to the law.

APPEAL from Burleson. Tried below before the Hon. I. B. McFarland.

*J. W. Terry,* for appellant: The act of March 23, 1887, in so far as it requires a railroad company which has before that date acquired a right of way from the owner of the land, without condition or stipulation imposing upon it the obligation to construct crossings, and the legal effect of which was to give to such company the right to build and fence its road without constructing crossings for the benefit of such owner, to make openings in its fence and construct a crossing in the private inclosure of such owner, in effect takes the property of such company without compensation and confers it upon the land owner, impairs the obligation of a contract, is retroactive, depriving the company of a vested right, and deprives such company of property and privileges without due course of law, and is void. (Constitution of U. S., sec. 10, subd. 2; art. 14, sec. 1; Constitution of Texas, Bill of Rights, secs. 16, 17, 19; art. 12, secs. 5, 7; art. 16, sec. 18.)

---

. Opinion of the court.

---

That the Legislature can not confer the rights or property of one upon another, they cited Osborn v. Hart, 24 Wisconsin, 90; Bankhead v. Brown, 25 Iowa, 540; Reeves v. Treasurer, 8 Ohio State, 346; Blackman v. Halves, 72 Indiana, 515; Jeral v. Green Island Drainage Company, 12 Nebraska, 163; Towell v. Eastern Railway, 18 New Hampshire, 547; Commonwealth v. Eastern Railway, 103 Massachusetts, 254.

The act impairs the obligation of a contract. (Bailey v. R'y, 4 Harr., Del., 389.) It is retroactive and deprives of property without due process of law.

*Broadus & Banks,* for appellee: The act of March 23, 1887 (Gen. Laws, p. 39), is in all respects constitutional, being an exercise of the general police power of the State, in its discretion for the comfort and welfare of its citizens, does not violate the obligation of contracts, does not deprive appellants of property without due course of law, and does not deny them the equal protection of the law.

Railroad declared public highways. (Constitution of Texas, art. 20, sec. 2), and as such within legislative control. As to constitutionality of similar laws, see Missouri Pacific Railway v. Hames, 115 United States, 512–524; Texas Central Railway v. Childress, 64 Texas, 346; Thorp v. Rutland & Burlington Railroad, 27 Vermont, 140.

It does not deny the equal protection of the laws. (Treadway v. Railroad Company, 43 Iowa, 527; Ferrill v. Union Trust Company, 77 Missouri, 475; State v. Matthews, 44 Missouri, 529; Barbier v. Connelly, 113 United States, 27.)

Does not deprive plaintiff in error of property without due course of law. (Walker v. Sauvinet, 92 U. S., 90; Davidson v. New Orleans, 96 U. S., 97.)

Does not impair obligation of contracts. (Constitution of Texas, Bill of Rights, sec. 17, last clause; Cooley's Con. Lim., fourth edition.)

GAINES, ASSOCIATE JUSTICE. The decision of this case depends upon the determination of the question of the constitutionality of the act of March 23, 1887, which provides that all railroad companies which had theretofore, or which may thereafter "fence their right of way may be required to make openings or crossings through their fence and over their road bed along their right of way every one and a half miles thereof;"

and "if such fence shall divide any inclosure, that at least one opening shall be made in said fence within such inclosure." (Laws Twentieth Leg., p. 39.) Appellee was the owner of an inclosure, through which appellant had built its road and fenced its right of way, and having given notice to construct its crossing in his inclosure, and the company having failed to comply with his demand, brought suit to recover the penalty provided by the statute, and recovered a judgment.

The facts were admitted as alleged in the petition and answer. From the answer it appears that the company was incorporated by a special law of the Legislature, passed in 1873, and that, since the adoption of the Constitution of 1876 and the Revised Statutes, its charter has been several times amended in accordance with the provisions of the latter relating to the amendment of the charters of railroad corporations. It also appears that, in 1880, appellee conveyed to appellant the right of way, through his enclosure by deed, without any reservations or conditions whatever, and that, in the same year, appellant constructed its road and fenced it as required by the laws then existing.

Under the law which existed at the time the right of way was conveyed, it was the duty of the railway company to fence its track, and it becomes important to inquire what were the rights of the parties with respect to crossings over the railroad track in the inclosures, after the conveyances were executed and before the passage of the law in question. Our previous statutes contain no provision in reference to what is now commonly known as "farm crossings," and we must resort to the general principles of the common law in order to determine the question. In the first place, we are of opinion that the owner of inclosed land who has granted the right of way to a railway company by deed, must be held entitled to such crossings over the railroad track as are reasonably necessary for the use of the premises inclosed. It is elementary law that a vendor who conveys to another land which is surrounded by the vendor's other land, impliedly grants a right of way over the land which is not conveyed (Washburne on Easements, 233), and it is held that "the same rule applies when the grantor conveys land surrounding a parcel retained by him." (Brigham v. Smith, 4 Gray, 297; Seymour v. Lewis, 13 N. J. Eq., 444.) This is upon the doctrine that the grantor impliedly reserves a way of necessity over the premises conveyed, and the principle applies with

equal force to the owner of a farm who grants a right of way through his enclosure to a railroad company or from whom the right of way is legally condemned for such a purpose. From the very nature of the transaction it is not to be presumed that the owner in the first case intended, by his grant, to cut off access from one part of his inclosure to another, or in the second, that the Legislature in authorizing the condemnation intended to bring about such a result. (Railroad v. Bost, 2 Will. Condensed App. Cases, sec. 386.)

In cases either of a grant or a condemnation it is the right of the owner of the land to demand crossings; but in the absence of some stipulation in the contract or of some proposition in the condemnation proceedings, we do not think it the duty of the railroad company to put them at its own expense. It is generally held, and especially by the more recent authorities, that in the absence of a statute making it the duty of the corporation to provide farm crossings, the expense of constructing and maintaining them is to be allowed the owner as a part of the damages for condemning the right of way. (Railroad Company v. Gough, 29 Kan., 94; Railroad Company v. Keegles, 32 Kan., 408; Chalcraft v. Railroad Company, 113 Ill., 86.)

Judge Redfield in his work on Railways, written before the decisions in the cases cited: "And the tendency of the more recent decisions is sensibly in this direction; and we might add without offense, that in our judgment it is the only sensible direction the decisions could take, and we have always expected them to take such direction in the end, however late it may come." (1 Redfield on Railways, 510; see also Railroad Company v. Moffatt 6 Cal., 74; 3 Sutherland on Damages, 444, 445.) Such is also the ruling of our Court of Appeals in the case of International & Great Northern Railroad Company v. Bost, above cited; and it is to be remarked that the elements of damages in condemnation proceedings by railroad companies is a matter peculiarly within the cognizance of that tribunal. The decisions of this court in International & Great Northern Rail road Company v. Pape, 62 Texas, 313, is in accord with the principles announced in the cases cited. These rulings are evidently founded upon the doctrine that in the absence of a statutory provision upon the subject, the law gives a right to the owner of the farm to have crossings, but imposes upon him the expense of their construction and maintenance, and we think it clear that one who grants a right of way by an absolute deed

without any stipulation in this regard, has precisely the same rights against his grantee as if his land had been legally condemned, and no more. It must therefore be presumed that when he made the deed he received compensation for the prospective expense of making and keeping in repair the necessary crossings over the track of the railway, and the inconvenience resulting to him from the construction and operation of the railroad. It follows from the principles announced, that there being no law requiring railroad companies to make farm crossings at the time appellee executed his deed to the company is presumed to have indemnified him for the expense of constructing and keeping in repair all necessary crossings within his inclosure.

We come, then, to the question of the power of the Legislature to require of the railroad companies to put in crossings at their own expense, after having compensated the owner for the burden imposed upon them by the necessity of such constructions. It is claimed that the statute under consideration was but a lawful exercise of the police power of the Legislature. The right of the Legislature to require railroad corporations to fence their track, has been universally upheld, and has been expressly affirmed by this court. (Texas Central Railway Co. v. Childress, 64 Texas, 346, and cases there cited. Railway Co. v. Hemes, 512; same case, 86 Mo., 629; Welden v. Railway Co., 65 Mo., 332; Quackenbush v. Railroad Co., 62 Wis., 411; Railway Co. v. Power, 16 Kans., 573; Sawyer v. R. R. Co., 105 Mass., and cases cited in Tiedeman on Police Power, 597, n. 1.)

In speaking of our statute on this subject this court, in the case above cited from our Reports, says: "The object of the statute was to compel them (the railroad companies) to fence their tracks for the purpose of preventing damage to live stock, and for the still more important purpose of protecting the lives and limbs of passengers upon their trains." Laws made for such purposes are clearly within the scope of the police power, an authority which it is held the Legislature has no right, by charter or otherwise, to give or bargain away. Regulations imposed upon railroad corporations, requiring the ringing of bells, the blowing of whistles, the constructing of crossings at the intersection of public highways, and the maintenance of cattle guards, having in view similar objects, have been uniformly sustained as a proper exercise of a power impliedly re-

served in granting the corporate' franchises, and hence not in conflict with that provision of the Constitution of the United States which prohibits the States from making any law impair-ing the obligation of contracts. But a statute making it the duty of a railroad company which has already fenced its tracks in obedience to previous laws, to construct crossings within en-closures, apparently for the sole benefit and convenience of the owners of such inclosures, seems to us to present a different question. We have found but one case which holds that such a regulation comes within the limits of the police power (I. C. Railroad Company v. Willenborg, 117 Ill., 203); but, in the view we take of the case before us, it is not necessary in reaching our conclusion either to affirm or deny the correctness of that opinion. In the case cited the owner of the land had stipulated for, in his conveyance of the right of way, that the railroad company should construct the necessary farm crossings; so that the specific constitutional question which is presented here did not there arise. That question now recurs: Can the Legisla-ture, after the company has compensated the owner of an in-closure for the expense of constructing his own crossings, shift the burden and require the company to put them in at its own charge? In our opinion, this question must be answered in the negative.

Appellant's charter, although granted by special act of the Legislature in 1873, having since been amended under the pro-visions of article 4109 of the Revised Statutes, it may be con-ceded that by accepting such amendment it has been subjected, as to the privileges and franchises therein granted, to the con-trol of the Legislature. (Constitution of 1876, art. 1, sec. 8, and art 1, sec. 17.) But the right of the Legislature to amend the charter of a corporation can not be construed as placing them beyond the pale of those constitutional provisions which guard the rights and property of natural persons from the encroach-ments of the legislative power. It is said by Chief Justice Shaw in the case of Commonwealth v. Essex County, 73 Mas-sachusetts, 253, "The rule to be extracted is this, that when under power in a charter, rights have been acquired and be-come vested, no amendment or alteration of the charter can take away the property or rights which have become vested under a legislative exercise of the powers granted." This was said in a case involving the rights of a corporation under a charter which was "subject to amendment, alteration or repeal

at the pleasure of the Legislature." In the cases before us appellant has a conveyance of its right of way from appellee, for which it has paid a valuable consideration, according to the implied terms of the agreement appellant was discharged of the obligation to construct or pay for appellees' crossways. Can it be said that an act which imposes this duty upon appellant does not impair the obligation of this contract? We can not say it is the taking or damaging of property for a public use without compensation, because it seems to us the purpose for which the corporation is to be subjected to this expense is essentially private. But in so far as it takes from appellant the money required to construct these crossings and appropriates it to the benefit of appellees, it is a taking of money (which is property) without due process of law, and is therefore unconstitutional. It is said in Hepburn's case, 3 Bland, 98: "The government of this Republic, by virtue of that eminent domain which for public purposes is entrusted to all governments, may take the property of any individual and cause it to be applied to the use of the public on making him a reasonable compensation. But it can not arbitrarily take the property of one citizen and bestow it upon another, because such an act, though not specially prohibited by the Constitution, would be contrary to the fundamental principles of government itself." (See also Crenshaw v. Slate River Co., 6 Rand., 345; In matter of Albany Street, 11 Wend., 149; Bloodgood v. Railroad Co., 18 Wend., 59.)

In the case last cited (Commonwealth v. Essex Company), the corporation had been granted a charter by the Massachusetts Legislature to construct a dam across the Merrimac river, and had been requested to put in suitable fishways as required by commissioners, and also to indemnify the owners of fishing rights for all damages to the fisheries accruing from the construction of the dam. The fishway was put in and the damages were paid. Subsequently the Legislature passed an act requiring a different fishway. It was held that the act was unconstutional and void. This decision was made upon the ground that the parties interested in the fishery rights had been compensated for the damages resulting from the imperfect fishway, as is shown by the subsequent case in the same court of Commissioners v. Water Power Company, 104 Massachusetts, 446. The facts of the latter were very similar to those in the former case. The distinctive difference was that in the latter it was shown

that the fisheries below the dam had been damaged by its construction and there had been no compensation to the owners below for these damages. By reason of this fact the court held that the act of the Legislature requiring the company to put in an improved fishway was a proper exercise of the police power to protect public right which had not been extinguished by compensation as in the Essex Company's case. It is clear, from the opinion that if the Water Power Company had been compelled to pay and had paid damages to owners of the fisheries below as well as to those above its dam, the court would have held in the latter case as in the former, that the Legislature could not impose upon the corporation the expense of a costly work in order to restore to parties fisheries for the loss of which they had been directly paid. The same principle is involved in this case and is decisive of it. There are many cases in which a similar doctrine has been maintained, but we can merely cite here City of Erie v. Erie Canal Co., 59 Penn. State, 174; Attorney General v. Turnpike Road, 55 Penn. State, 466; State v. C. M. & St. P. R'y Co., 31 N. W. Rep., 365; Commonwealth v. New Bedford Bridge, 68 Mass., 339; Washington Bridge Co. v. State, 18 Conn., 53; Lake View v. Rose Hill Cemetery Co., 70 Ill., 191; R'y Co. v. Bloomington, 76 Ill., 447; People v. Plank Road Co., 9 Mich., 284; Towle v. Eastern R'y Co., 18 N. H., 547.

The main case relied upon by the appellees in order to sustain the constitutionality of the act in question is Thorpe v. Railroad Company, 27 Vermont, 140. That case maintains the validity of an act of the Legislature requiring railroad companies to put in cattle guards at farm crossings. It seems to us that requirements for fence and cattle guards stand upon the same principle. They are necessary for the protection of such domestic animals as are likely to stray upon the track, and more especially for the safety of passengers and employes of the railroad companies. Farm crossings are for the sole convenience of the owners of the land, and stand upon a different ground. Besides it did not appear in that case that the owners of the farm had been in any manner compensated for the expense of constructing his own crossings or cattle guards. That decision, though it extends, as we think the doctrine of the police power to its extreme limits, is not in conflict with the views expressed in this opinion.

We think it would have been competent for the Legislature in providing for fences, to have required the companies to put in farm crossings as a regulation of its undoubted power to require such fences, all subsequent rights of way would be presumed to have been acquired with reference to that law, and the land owner would not have been presumed to have assumed the burden of their construction. We therefore think that as in all subsequent acquisitions of rights of way in the absence of some express or implied agreement to the contrary, the railroad companies will be charged with the duty imposed by the statute, and the measure of the compensation will be regulated accordingly. Therefore, as to such future cases, in our opinion, the statute should be constitutional, in so far as it applies to crossings within inclosure. (Smith v. Railroad Company, 63 New York, 58.)

For the reasons given in this opinion, we think so much of the statute under consideration as requires the railroad corporation to construct farm crossings at their own expense, where the right of way has been acquired by deed and the land fenced before the passage of the law, is in conflict with the Constitution, and therefore the judgment will be reversed and here rendered for appellant.

*Reversed and rendered.*