## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. LEE.

(Court of Civil Appeals of Texas. Texarkana. Nov. 6, 1912. On Motion for Rehearing, Nov. 14, 1912.)

1. RAILROADS (§ 103*)—FENCES — STATUTORY PROVISIONS—"FIELD."

The word "field," in Rev. Civ. St. 1911, arts. 6595–6598, requiring every railroad company whose road passes through a "field" to place and maintain cattle guards at the points of entry, etc., means land inclosed by a fence which will prevent the ingress of live stock, and a railroad company need not provide cattle guards unless its track passes through an undivided field inclosed by the owner, as distinguished from separate fields so inclosed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 315–332, 762, 763, 767, 769, 772; Dec. Dig. § 103.*

For other definitions, see Words and Phrases, vol. 3, pp. 2761–2762.]

On Motion for Rehearing.

2. RAILROADS (§ 103*) — FENCES — CATTLE GUARDS — DUTY TO CONSTRUCT AND MAINTAIN.

Where a railroad company maintaining a track through a plantation fenced its right of way, and constructed cattle guards at the points of entry, and the owner subsequently inclosed the land and joined his fences to the right of way fences without intending to subdivide his land into separate fields, the track passed through a field within Rev. Civ. St. 1911, arts. 6595–6598.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 315–332, 762, 763, 767, 769, 772; Dec. Dig. § 103.*]

3. DAMAGES (§ 62*)—INJURIES TO PROPERTY—MITIGATION.

Where a railroad company failed to maintain proper cattle guards at points of entry into a field, the owner damaged by trespassing hogs passing over the cattle guards was not required to minimize damages by fixing the cattle guards and the right of way fence built by the company.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–132; Dec. Dig. § 62.*]

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Action by Luck Lee against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

Appellee owns a plantation of about 500 acres in Bowie county, which the appellant's line of railroad enters on the east, running through in a southwesterly direction to the west side. The conclusion is reasonably warranted that appellee cleared and inclosed the land after the railway was built. Prior to the injury in suit, the railway company had erected a fence on its right of way, on both the east and the west side, entirely through the tract of land. Appellee's fences around his land joined to the right of way fences. In addition to the right of way fences, the appellant had constructed cattle guards or stops at the points where the railway enters the appellee's farm on the east and west. There is evidence that the right of way fences were insufficient to prevent hogs from en-

tering the appellee's cultivated land, which was situated on each side of the right of way fences, if the hogs once entered the inclosed railway track at the cattle guards or stops on the east and west sides of the farm where the railway enters the same. It was established, without conflict of evidence, that hogs entered appellee's inclosed farm by first getting over or through the cattle guards or stops on the east side, and then getting through the right of way fence into appellee's growing crops, and destroyed a large amount of same. The suit, among other things, was to recover the value of the crops thus destroyed. It was alleged as ground for suit that appellant had neglected and failed to place, and keep same in good repair, good and sufficient cattle guards or stops at the points where its line of railroad entered appellee's inclosure, as required by law. The court charged the jury: "The evidence shows that the railroad of defendant enters the inclosure or field of plaintiff in two places, one on the east and one on the west. It was the duty of defendant to put in cattle guards where its railroad enters the field of plaintiff that would prevent stock of every kind from entering said field. If you believe from the evidence that hogs crossed either of said cattle guards and thereby entered the field of plaintiff and injured or destroyed any of his corn or peas standing therein, and thereby damaged plaintiff, then you will find for plaintiff as to this item of damage."

Glass, Estes, King & Burford, of Texarkana, and E. B. Perkins and D. Upthegrove, both of Dallas, for appellant. Mahaffey & Thomas, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). The reasons relied on, among others, in the first, second, and third assignments for error in the charge of the court are (1) because the charge made it the absolute duty of the railway company to put in cattle guards sufficient to turn the hogs of appellee; and (2) made the railway company liable for the damage from depredation, regardless of its negligence. The charge assumed as a matter of law a violation on the part of appellant of an express statutory provision imposing upon a railway company the duty to place and keep in repair such good and sufficient cattle guards or stops at the points where the railway enters a field or inclosure of the owner as to protect such field or inclosure from depredations of stock of every description. Articles 4523–4527, Revised Civil Statutes 1895 (articles 6595–6598, Rev. Civ. St. 1911). As the charge was evidently applied to the facts proven, the objection here made, that it was error to impose absolute liability on appellant upon the finding that the hogs got over the cattle guards, necessarily extends to and involves a determination of the correctness of the charge as applied to the

facts proven. If the court was in error in assuming the facts established, a violation of an express statutory provision, then imposing absolute liability, or liability at all, for the damage, was error, as claimed. The railway company had erected a fence on its right of way on both the east and west sides, extending entirely through the appellee's land. Appellee's fences around his farm joined and connected to the right of way fences. The appellant had, in addition to the right of way fences, constructed cattle guards or stops at the points where the railway enters the appellee's farm on both the east and the west. The hogs got over or through the cattle guards or stops, and then got through the right of way fences into appellee's growing crop. These are the facts admitted by the record. The statute above referred to was intended as well to relieve the landowner from the necessity of making cross fences because of the right of way as to protect the crops and inclosed land as a whole of adjacent landowners or their tenants from the incursions of live stock from the outside.

[1] "A field" evidently means that the part of the land used as such must be evidenced by a fence or some form of inclosure on the part of the owner which will prevent the ingress of live stock, since it would be an idle thing to require the railroad company to protect such cultivated land by a cattle guard or barrier to stock when by reason of the lack of a fence or other form of inclosure running to that portion of the right of way occupied by the railway company such cattle guard or stop would afford no protection. The statute, as can be seen, imposes the duty upon the railway company to put in the cattle guards or stops only "where the railway passes through a field or inclosure." A railway company has the legal right to fence in its track or right of way. Considering the purpose and language of the statute, in connection with the legal right of the company to fence in its track or right of way, it is evidently implied that, before the neglect of the duty to provide the cattle guards or stops is established, it must be shown that the track of the railway passed through the single or undivided field or inclosure of the landowner, as distinguished from two separate fields or inclosures of the landowner's making and intention. As appellee's fences were joined to the right of way fences on each side of the right of way of appellant, with his intention to have separate fields and inclosures, his field and his inclosure were partitioned from the single field and inclosure, and became and were by intention and design separate and distinct as such field and inclosure, lying one on each side of appellant's right of way and fence. After such partition by the landowner, the railway then and thereafter passed through and within its own fenced, separate, and exclusive in-closure, and not through either of the fields or inclosures of appellee on each side of the right of way. In answering a certified question in Railway Co. v. Wetz, 97 Tex. 581, 80 S. W. 988, the Supreme Court, in making distinguishment of the Adams Case, 63 Tex. 200, remarked: "The only difference between that case and this is that in the one there were and in the other there were not fences built along the margins of the right of way. Obviously that makes no difference in the application of the statute." This latter remark was not involved in the question there to be answered, and we do not think that the court meant it to decide the question in the instant case being considered. And in that case there was no question of the intention of the landowner to partition his land by fences into two fields or inclosures, one on each side of the right of way. It is the simple question here, and no other, of whether the statute is applicable to the peculiar facts proven. In the case of Southwestern Telegraph & Telephone Co. v. Krause, 92 S. W. 431, the court in the opinion cited the case supra, but the facts of the case and the question involved there are entirely different from the peculiar facts of the present case. In the facts of the instant case we think the statute is not applicable and that the court erred in the charge, as contended by appellant. Though the cattle guards have been also erected, the railway company has not done so under legal requirement here and is not absolutely obligated to maintain same to prevent stock depredations on appellee's land.

The judgment must be reversed and the cause remanded in so far as the particular recovery appealed from is concerned. The judgment for stock killed at Findly Station will be affirmed.

### On Motion for Rehearing.

[2] In the first consideration of the case, we treated the evidence as showing that appellee had joined his fence with the right of way fence of the railway company, with the intention and purpose of using and having the railway fence to subdivide his tract of cultivated land into two separate and distinct inclosures, one on each side of the right of way. It was because of this fact appearing that appellee had intentionally subdivided and used his tract in two separate and distinct fields, one on each side of the railway, that we ruled that he had not so brought himself within the terms of the statute in question as to make it applicable, for it would not appear in such circumstances that the railway passed "through a field or inclosure" of his. Upon a reconsideration of the case, we find that we were in error in so treating the facts. We would not be warranted in the evidence in concluding that appellee in fencing only to the right of way intended, and had the purpose of, having the railway fence operate to subdivide his cultivated land into

two separate fields or inclosures, one on each side of the right of way fence. This difference in fact makes, we think, the first ruling erroneous, and the appellee's motion for rehearing is granted.

The assignments are further considered and ruled on. The objection to the charge of the court heretofore set out must be overruled to the effect that it was erroneous as imposing absolute liability for the damages shown in the evidence because of the failure of the company to put in a stock guard that was sufficient to turn the hogs in evidence. The charge was in substantially the language of the statute in such respect. See articles 6595–6598, R. S. of 1911. And statutes upon like subjects have been held constitutional as within the police powers of the state. See Railway Co. v. Childress, 64 Tex. 346; Railway Co. v. Rowland, 70 Tex. 298; 7 S. W. 718.

A further point made by the assignments is based upon the assumption that the evidence showed that it was impossible for the company to construct a stock guard that would be sufficient to turn the hogs in evidence. The proof does not, we think, warrant the assumption, and therefore such question is not properly before us. There is no proof that the hogs were not hogs of ordinary disposition and docility. The appellee testified, and there is no proof to the contrary, that "my hogs were not any worse than anybody else's before they went through that guard."

[3] Error is predicated upon the refusal of the court to give special charges to the effect that it was the duty of the appellee to minimize the damages to his growing crop by fixing the stock guards and the right of way fence so as to keep the hogs out of his field. The question here has been heretofore decided, and the assignments are overruled. Railway Co. v. Young, 60 Tex. 201; Railway Co. v. Adams, 63 Tex. 201; Railway Co. v. Knoepfli, 82 Tex. 270, 17 S. W. 1052; Railway Co. v. Blackwell, 40 S. W. 860; Kendall v. Railway Co., 95 S. W. 757.

The judgment is in all things affirmed.