Missouri, Kansas & Texas Railway Company v. John T. Chenault.

Decided November 3, 1900.

**1. Railway Company—Condemning Right of Way—Judgment for Possession Before Payment Void.**

Where, in proceedings by a railway company to condemn land for right of way, had in the county court in 1886, and in which an appeal from that court was taken, its judgment that the title to the right of way should vest in the company upon the deposit by it in court of the amount awarded to the landowner was in that respect void and subject to collateral attack, since, until the Act of 1899 (page 105), the company could not acquire title to the right of way in such case until it actually satisfied the judgment.

**2. Same—Crossing in an Inclosure Need Not Be an Open One.**

The article of the statute requiring that railway companies, where they fence their right of way, shall make at least one opening in any fence dividing an inclosure, does not entitle the landowner to an open crossing, free of gates. Rev. Stats., art. 4427.

**3. Same.**

Where the condemnation was prior to the Act of 1887 (now articles 4427-4434, Revised Statutes), requiring railroads to make crossings, the railway company could not thereafter be required to put in a crossing in an inclosure for the benefit of the landowner at its own expense, since the damage already awarded against it covered all character of injury, inconvenience, and expense to which the landowner would be put.

**4. Same—Landowner's Right to Way of Necessity.**

In such case, where the landowner shows a right to an open crossing as a way of necessity, he can entitle himself thereto only by offering to construct and maintain such crossing at his own expense.

Appeal from Dallas. Tried below before Hon. Richard Morgan.

*T. S. Miller* and *Alexander & Thompson*, for appellant.

*Curtis Hancock* and *Thomas F. Nash*, for appellee.

TEMPLETON, Associate Justice.—In 1886 Mrs. Martha Chenault and others, among them the appellee, J. J. Chenault, owned a tract of land situated in Dallas County, containing about 200 acres. The Dallas & Greenville Railway Company desired to construct its line of road across the land, and, being unable to agree with the owners on the damages to be allowed, instituted condemnation proceedings. Commissioners were accordingly appointed, and on a hearing Mrs. Chenault and her co-owners were awarded the sum of $1600, from which award both parties appealed to the County Court. Soon thereafter, to wit, on October 5, 1886, the company paid into the hands of the clerk of said court an amount equal to said award and all costs. On June 8, 1887, judgment was rendered in said court, based on a verdict of a jury, in favor of Mrs. Chenault and her associates for $71, the value of the land taken, and the further sum of $1500 damages, and in favor of the company for the costs incurred by reason of the appeal, the other costs being taxed against it. The company executed a supersedeas bond and appealed to the Court of Appeals, where the judgment was affirmed on May 30, 1890. The judgment was satisfied in part on June 21, 1890, and in full on September 3, 1890. The sums paid on the judgment included legal interest from the date thereof. The appellee now owns the entire tract of land above mentioned, having bought the interest of the other owners, and the appellant is the legal successor of the Dallas & Greenville Railway Company and is entitled to all the rights and subject to all the liabilities of the same. Pending the disposition of the condemnation proceedings, presumably in the latter part of 1886, the company constructed its line of road across said lands, and it and its successor, the appellant, have since that time continuously operated the said line of road.

The road as constructed cuts off three acres of said land from the main body of the tract. The farm, the dwelling-house, the barns, and all the other improvements are on the main tract. There are situated on the three acres several springs upon which the appellee is compelled to rely almost entirely for his water supply. In 1890 or 1891 all of appellee's land was embraced in one inclosure, and the appellant fenced its track lying within the inclosure. At the same time, it constructed, within the inclosure, an open crossing with cattle-guards and wing fences, across its track for the convenience of the appellee in reaching the water with his stock. About March 4, 1896, the appellant, over the protest of the appellee, removed the cattle-guards and wing fences and substituted gates in lieu thereof. The appellee brought this suit for damages, actual and punitory, occasioned by the substitution of the gates for the open crossing. He recovered judgment for $500 actual

damages, and $5500, the accrued statutory penalties claimed by him. On appeal to this court it was held that he could not pursue both his claim for actual damages and for the statutory penalty, and that the penalties awarded in excess of $1500 were not authorized under the pleadings and evidence. The actual damages and excessive penalties having been remitted, the judgment was affirmed. A writ of error was granted by the Supreme Court, and it was held by that court that article 4433, Revised Statutes, permitting the recovery of penalties for the failure of railway companies to put in crossings, did not apply to crossings within inclosures, and the judgment was reversed and the cause remanded for another trial. Railway v. Chenault, 92 Texas, 501.

The appellee thereupon filed an amended petition and claimed actual damages only. He based his claim upon four grounds, to wit: (1) Upon a contract for an open crossing made with the company at the time of the condemnation; (2) upon a like contract made when the original crossing was put in; (3) upon the statutory right to an open crossing, which he contended was conferred by article 4427, Revised Statutes; (4) upon his right to an open crossing as a way of necessity.

There was a trial by jury and the court, in effect, instructed the jury that the appellee was entitled to an open crossing, and to allow him such damages as would compensate him for the failure of the company to provide one. There was a verdict for appellee for $1100, and the appellant has appealed.

There was no evidence whatever tending to show a contract made at the time of the condemnation. There was evidence introduced for the purpose of showing a contract made at the time the original crossing was put in, but, whatever may be said of the proof on this issue, it was not sufficiently conclusive to authorize the court to assume the existence of such contract. The court, even though requested to do so by the appellee, refused to submit to the jury the question as to the right of the appellee to an open crossing as a way of necessity, and the evidence on this issue was not sufficient to justify the court in concluding, as a matter of law, that appellee was entitled to such crossing. The court must therefore have held that article 4427, Revised Statutes, applies to this case, and that the opening there provided for means an open crossing. It is to the questions arising from this holding that we must address our attention.

Article 4427 reads as follows: "All railway corporations in this State which have, or which may hereafter fence their right of way, may be required to make openings or crossings through their fence and over their roadbed along their right of way every one and one-half miles thereof; provided, that if such fence shall divide any inclosure, that at least one opening shall be made in said fence within such inclosure." Article 4428 describes the character of the crossings to be put in. Articles 4429 and 4430 provide who may demand the crossing, and how the demand shall be made. Articles 4431 and 4432 provide how the demand shall be complied with. Article 4433 provides a penalty for failing to comply with the demand. Article 4434 provides that the articles above men-

tioned shall not be construed to affect the law requiring railroad companies to put in crossings at streets and public roads. These articles of the statute were first enacted in 1887.

It was held by the Supreme Court in Railway v. Rowland, 70 Texas, 298, that the Act of 1887 did not apply where the company had acquired its right of way prior to the time the law of 1887 went into effect. The judgment of the County Court above mentioned was rendered before the Act of 1887 became effective, and it was provided by the judgment that the title to the right of way should vest in the company upon the payment into the court of the amount recovered by the Chenaults. There was then in the hands of the clerk of said court, which had been deposited by the company, an amount more than sufficient to satisfy the judgment. The appellant contends that notwithstanding its appeal from the judgment and the giving by it of the supersedeas bond, it acquired the right of way by virtue of the judgment and the deposit, and this occurring before the Act of 1887 became operative, the statute relied on by the appellee does not apply to this case. It was decided by this court on the former appeal that the contention was not well taken, and we are of opinion that the decision was correct. Indeed, we do not regard the question now as being an open one in this State. In Crary v. Channel and Dock Co., 45 Southwestern Reporter, 842, the Court of Civil Appeals of the Galveston District decided the question in accordance with the holding of this court. And in 1899 the Legislature, recognizing the correctness of the decision, passed an act providing for the taking of the right of way by the making of a deposit pending the final disposition of the condemnation proceedings. See Acts 1899, page 105. It may therefore be regarded as settled that, prior to the passage of the Act of 1899, a railway company could not and did not acquire its right of way by a deposit made before the condemnation litigation was finally terminated and the damages awarded paid. It will be remembered that the judgment of condemnation in the Chenault case, while it was rendered before the Act of 1887 went into effect, was not affirmed and paid off until 1890, long after the law became operative. We hold, as before, that the company did not acquire its right of way until it satisfied the judgment in 1890. An extended discussion of the question is unnecessary.

The appellant contends that, although the views here expressed may be correct, the judgment provides that the title to the right of way should vest upon the making of the deposit, and that the deposit having been made, it acquired the right of way at that time, unless the judgment had been set aside. It is now insisted that it is a collateral attack on the judgment to deny that it was effective in vesting title as it purported to do. We reply that the court was absolutely without jurisdiction to vest title; that the law vested the title upon the compliance by the corporation with the provisions of the statute, and not until then. The court having exceeded its jurisdiction in rendering judgment vesting title, the judgment in that respect was of no effect, and could be attacked in any proceeding where it was relied on.

The next question that arises is, must the farm crossing mentioned in

article 4427 be an open one?  Prior to the enactment of the law of 1887, when an inclosure was divided by a railroad running through it, the landowner was entitled to a crossing as a way of necessity, but it was his duty to put in and maintain the crossing at his own expense.  Because this duty rested upon him, the company was required to compensate him therefor before it could take his property and construct its road.  Railway v. Rowland, supra.  A way of necessity must be adequate; it must be reasonably convenient and sufficient to meet the necessities of the person entitled to the way.  And if the use of gates at the crossing materially inconveniences the landowner, and an open crossing alone is sufficient to meet his reasonable requirements, then he is entitled to such open way. In all cases, however, the right of the company to a proper and necessary use of its track must be taken into consideration.  Goddard on Easements, 319, 330, 331; Jones on Easements, sec. 400, et seq.

Bearing in mind the existence of these common law rules at the time the Act of 1887 was passed, let us look for the meaning of that act in so far as it relates to farm crossings.  Judge Brown, speaking for the Supreme Court on the former appeal of this case, uses the following language: "A careful study of the Act of 1887   *   *   *   will disclose the fact that the leading purpose of the Legislature was to provide crossings outside of inclosures and independent of streets and public roads, at intervals not greater than one and one-half miles, so that citizens and their stock might pass freely from one side of the railroad to the other.  The requirement with regard to crossings within inclosures was introduced by a proviso, and the structure of the act indicates that it was more a measure of precaution against affecting an existing right than to provide a remedy or confer a new right.  We do not intend to intimate that the right does not exist under the statute."

The existing right to which Judge Brown refers was the common-law right to a way of necessity, which, as we have seen above, must always be adequate, and which the owner of the inclosure was bound to put in and maintain at his own expense, after being compensated for so doing by the company.  In what respect did the Legislature intend to change the existing right?  The right was well defined and was sufficient, just, and equitable.  By it an open crossing could be demanded whenever the circumstances made one necessary.  To require an open crossing within every inclosure, regardless of the circumstances, would be as unnecessary as it would be unjust.  It is a well known fact that in many inclosures such crossings would scarcely ever be used, and to compel the construction of a useless crossing would be to impose unnecessary expense upon the company without any corresponding benefit to the landowner.  Such effect ought not to be given to the law unless the language of the act plainly requires it.  The leading purpose of the act was to provide a right that did not then exist, that is, for neighborhood ways of convenience outside inclosures, and it seems that no article of the act was intended to apply to farm crossings except the one containing the proviso quoted.  Therefore article 4428, which provides that the crossings shall be thirty feet in width and be made and kept in such

condition as to admit the free and easy passage of horses, cattle, sheep, hogs, and all other domesticated animals, wagons and other vehicles, does not throw any light on the character of crossings required within inclosures. It is true that in the proviso relating to farm crossings, the crossing is spoken of as an opening. Literally, an "opening" in a fence may be said to mean an unobstructed way through it. But we all know that in common parlance the word does not always have such significance; that it is sometimes used to indicate a way through that is capable of being used as a mode of ingress and egress to and from the inclosure. Did the Legislature use the word in its most restricted and literal sense? It will be remembered that in the first part of article 4427 the words "opening" and "crossing" are used interchangeably, thus indicating that the word was used in a sense incompatible with its literal definition. And if we give the word its literal meaning and say that by its use the Legislature intended to substitute an open way for the common law way of necessity, another difficulty arises. A way of necessity has a legal meaning, but an opening has not. What sort of opening is required? Must it be two feet or fifty feet in width? In what condition must it be put and maintained? To determine these questions we would have to resort to the common-law rules regulating ways of necessity, and by these rules the kind, width, and condition of the openings to be put in would vary with the circumstances of the different cases. If we adopt the construction that the word "opening" means an open crossing, the only effect of the act, when put into practical operation, is to force the company to construct open crossings when the same are unnecessary. Under the common law it is required to put in open ways wherever necessary, and surely the Legislature can not have intended to provide that the company should be compelled to put in open crossings when they were unnecessary. It is more reasonable to hold that the Legislature, in passing an act providing for neighborhood ways of convenience, intended by the proviso to prevent any construction of the act that would impair the then existing right of the owner of an inclosure through which a railroad ran to a way of necessity. At most the Legislature could have intended no more than to give statutory recognition to the aforesaid right, and to shift the duty of constructing and maintaining the way from the landowner to the company. Of course the shifting of this duty would relieve the company from its obligation to compensate the owner for performing the duty at his expense as a prerequisite to the acquisition of its right of way. And it would seem that the duty mentioned could be better performed by the company than by the landowner, since the former always has employes skilled in such work, while the latter generally is unskilled and can only perform the work imperfectly and at greater expense. The construction here presented preserves every right both of the company and of the landowner, and imposes no unnecessary burden upon either, and this no other construction would do. Beyond question it is within the power of the Legislature to prescribe the kind of crossings which shall be constructed within inclosures, and it may require all of them to be open and provided with

cattle-guards and wing fences. But it has not done so, and until it does, it is the duty of the courts to apply to cases growing out of claims for such crossings the well established principles of common law.

In the case of Railway v. Burgess, 41 Southwestern Reporter, 703, the exact question was decided by the Court of Civil Appeals of the Fort Worth district. It was there held that article 4427 did not confer on the owner of an inclosure a right to an open crossing. Unfortunately the decision was by a divided court, and the opinion was written by the dissenting justice. The reasons for the conclusion reached by the majority of the court are not stated, and this detracts from the value of the case as authority. No other case appears to be in point on the question. In Railway v. Searight, 8 Texas Civil Appeals, 593, and Railway v. Robinson, 17 Texas Civil Appeals, 400, the duty of the company to fence its right of way at private crossings was under consideration, and while the effect of those decisions seems to be against the right of the landowner to an open crossing, the question was not directly involved and the cases can not properly be regarded as authoritative expressions of the opinion of those courts on the point. The tendency of the courts of this State is unmistakably against the contention that the Legislature, by the Act of 1887, intended to create a right in favor of the owner of an inclosure to an open crossing, and this tendency seems to be based on the well settled principles of the law. We can not, without creating confusion in the law and disregarding the established rules of construction, hold that the appellee in this case has, by virtue of article 4427, a right to an open crossing as a matter of law. It follows that the trial court erred in holding that such right existed, and that the judgment should be reversed.

There is another question presented for our consideration and decision. We have seen that, prior to the enactment of the law of 1887, it was the duty of the owner of an inclosure divided by a railroad to construct and maintain his ways of necessity at his own expense. Since this expense was incurred because of the construction of the road, the company was required to compensate him therefor, and in a condemnation proceeding such compensation was included in the damages awarded the landowner. Railway v. Rowland, supra, and authorities there cited. And it was further held in the Rowland case that when the company had compensated the landowner for such expense, it was beyond the power of the Legislature to destroy the right of the company, thereby acquired, to have the landowner construct and keep in repair the crossing at his own expense, and for that reason it was held that the Act of 1887 did not apply to such cases. In this case the condemnation trial was had before the Act of 1887 went into effect, and it must be held that the damages awarded included compensation to the Chenaults for the expense of constructing and maintaining ways of necessity across the road within their lands, together with the expense occasioned by the inconvenience of the use of such ways.

It inevitably follows that when the judgment, with interest, was paid in 1890, the Chenaults received full compensation for all such expense.

The question now is, can such compensation be retained and the expense shifted from the landowner to the company? Practically it is the same question that was presented in the Rowland case, and on the authority of that case the question must be answered in the negative. The case before us is substantially the same as if the company had contracted with the landowner for a crossing of a specified kind to be put in and maintained by the landowner, and had paid the consideration agreed on. Such contract would be valid and binding whether entered into before or after the Act of 1887 became operative, and it would be beyond the constitutional power of the Legislature to destroy any right of either party under the contract. A farm crossing is a private way in which the company and the landowner alone are interested, and they may have the crossing provided by law or such other crossing, or no crossing at all, as may be agreed on between them. Of course they could not put in a crossing that would endanger the safety of the public without incurring liability for negligence, but within that limitation they may make such contract in relation to the crossing as they see fit. In this case the Chenaults, on the condemnation trial, demanded compensation for the expense they would incur by reason of being compelled to put in and keep up their ways of necessity across the company's track and the expense arising from the inconvenience of the use of such ways, and when they accepted such compensation they estopped themselves from refusing to perform the duty they had assumed. It would be unconscionable to permit them to recover, receive, and retain money paid them by the company as compensation for the injuries sustained by them by reason of the construction and operation of the road across their land and then relieve them from the effect of such injuries by compelling the company to so construct and operate its road as to prevent the infliction of any inconvenience or loss upon them. If the company, for a valid consideration, contracted with the appellee to put in and maintain an open crossing, as alleged by him, and failed to do so, then appellee has good reason to complain, and the courts will afford him redress. But unless he establishes such a case, or unless he shows that he is entitled to an open crossing as a way of necessity and that he has offered to construct and maintain such crossing at his own expense, and that the company has refused to permit him to do so, then he can not recover. The company's liability to him in the latter case, for such damages as are claimed in his petition, would arise only after he had so offered to put in the crossing and had been refused permission to do so.

The appellant contends that it ought not to be compelled to leave any private crossing open because, under the decisions in Railway v. Searight and Railway v. Robinson, supra, it is, as regards the killing or injuring of stock at such crossings, guilty of negligence for failing to have its track fenced and the crossing obstructed by gates or bars. A careful study of those decisions does not, in our opinion, support the construction placed on them by the appellant. In any event, we think it is clear that where the company is compelled by law to leave a crossing

open, it is not negligence to fail to fence it. Of course the law will not force a company to do a thing and then make the doing of it negligence. And we think that it is equally clear that when the company leaves a private crossing open at the request of the owner of the inclosure, or in accordance with a contract with him for an open crossing, and stock of the owner is killed or injured at such crossing, the company would not be liable, under article 4528, Revised Statutes, for failing to have the crossing fenced.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*