MISSOURI–KANSAS–TEXAS RY. CO. OF TEXAS v. CUNNINGHAM. (No. 2497.)

(Court of Civil Appeals of Texas. Amarillo. May 13, 1925.)

**1. Railroads ⬅69—Perpetual way acquired by deed.**

A railway company, obtaining a right of way by deed of warranty containing no reservations for crossings over its roadbed, acquires a perpetual way for purpose of constructing, operating, and maintaining the railroad, although it does not acquire the title in fee simple.

**2. Easements ⬅17(5)—Way of necessity reserved into land inclosed by grant.**

Where granted premises provide the sole means of access to land retained by grantor, a way of necessity is impliedly reserved across the granted land.

**3. Railroads ⬅102(1)—Farm crossing required.**

Where a conveyance, by gift of a right of way across plaintiff's inclosed lands, was made to a railway company in 1886, and although in 1899 plaintiff and wife jointly conveyed the same right of way for a consideration, held, that under Vernon's Sayles' Ann. Civ. St. 1914, art. 6486, the railway company was required to provide at least one opening across its roadbed within inclosed lands.

**4. Easements ⬅18(1)—Way over other's lands must be absolutely necessary.**

Under certain circumstances, absolute necessity must be shown to maintain an implied right to a way of necessity over the land of a stranger.

**5. Easements ⬅18(1)—Holder of dominant estate entitled to way reasonably necessary.**

Where the party asserting a right to a way of necessity is the holder of the dominant estate, reasonable necessity only for such way need be shown.

**6. Easements ⬅48(4)—Grantor may locate way of necessity.**

The location of a way of necessity in first instance may be made by the grantor; if he fails to do so, the grantee may select the site.

**7. Easements ⬅48(6)—Right to a way of necessity cannot be destroyed by offer of another.**

One, who is entitled to a way of necessity over another's land, cannot be deprived of that right by being offered another way over land owned either by himself or the other.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Easements ⟨⟩61(9½)—Necessity for passage across railway issue of fact.**

Plaintiff conveyed a right of way across his inclosed lands to a railway company. In an action for damages for destroying a passage which he used, and which was necessary for access to the portions thus divided, *held*, that whether such necessity existed as would entitle him to a passage was an issue of fact.

**9. Easements ⟨⟩18(7)—Crossing under right of way, destruction of which necessitated extra 1½ miles' travel, held a reasonable necessity.**

A railway company destroyed a passage under its right of way, dividing plaintiff's inclosed lands. Its loss necessitated plaintiff's traveling 1½ miles further to use the grazing lands on either side of the railway, which were directly accessible before, *held*, that the crossing destroyed was reasonably necessary.

**10. Appeal and error ⟨⟩1010(1)—Findings of trial judge, sustained by evidence, conclusive.**

In an action for damages for destruction of crossing over defendant's right of way, no request was made for submission of question as to whether the crossing was necessary to plaintiff's general use and enjoyment of his surrounding property, *held*, that finding of trial judge will not be disturbed; there being evidence to sustain it.

Appeal from District Court, Montague County; Paul Donald, Judge.

Action by D. Cunningham against the Missouri-Kansas-Texas Railroad Company of Texas. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

C. C. Huff and J. M. Chambers, both of Dallas, and Garnett & Garnett, of Gainesville, for appellant.

T. H. Yarbrough, of Montague, and Jas. R. Wiley, of Denton, for appellee.

JACKSON, J. This suit was instituted in the district court of Montague county by D. Cunningham, appellee, against the Missouri-Kansas-Texas Railway Company of Texas, appellant.

Appellee alleges: That he is the owner of, and in possession of a tract of land consisting of about 160 acres in Montague county, composed of a portion of the R. C. Thorne, A. C. Davis, and E. S. Singletary surveys, which is inclosed and used by him as a farm and pasture. That appellant owns and operates a line of railway built across said land so as to divide his inclosure into two parts, with approximately 100 acres on the north of the railway track, about 90 acres of which is in cultivation, and approximately 60 acres on the south, with about 30 acres in cultivation. The tract on the north and the one on the south were connected by a passageway under the railway track made by a wooden bridge 49 feet long and 10 feet high across a natural drain, along which ran an old road located more than 50 years ago, and used by appellee as a roadway from the part of his inclosure on the south of the track to the part on the north. Along this passageway all his live stock, farm products and farm machinery were moved, and had free passage, and it was the only passageway accessible. That the improvements and only permanent water are on the south of the railway, and the passage was the only way for live stock on the north to get to the water on the south. That about December 23, 1923, appellant, in disregard of appellee's rights, and over his protest, removed the wooden bridge and built a concrete culvert 4 feet wide and 6 feet high across said drain, and filled the sides with earth, closing the passageway, and depriving him of ingress and egress from one inclosure to the other. That the embankments where the culvert is erected is of sufficient height and width for appellant to have constructed its culvert so as to allow appellee the use of the passage.

Appellee alleges that he had enjoyed the uninterrupted possession of said 160 acres of land for more than 50 years; that the railway was constructed about the year 1886, and his inclosures were divided into two parts, and the passageway under the bridge left for use by appellee between his two inclosures, and was accepted and used by him as such, and was the only way of ingress and egress left for his use, and that he had continuously used it since the construction of the railway and the dedication of the passage, which use had been uninterrupted until closed by appellant about the 23d of December, 1923; that some years after the railway was built the right of way was fenced, but in doing so the fences were connected with the two ends of the bridge, permitting appellee the use of the passage under the bridge between his two inclosures; that he conveyed to appellant's predecessors the right of way on which said track is located, but it was not his intention to convey away or surrender any right that he had and held under the law giving him a way of ingress and egress, and his right to such passage is not only a right by prescription, or an easement, but is a way of necessity, and was enjoyed by him as the owner of the two tracts of land constituting the two inclosures connected by this passage under the bridge, and is a right appurtenant; that when the track was built no crossings were made within appellee's inclosures, and the right of way was not fenced for some years, but when fenced, one gated crossing was put in about three-fourths of a mile west of the wooden bridge, which was later closed by mutual consent, with the understanding that the opening under said wooden bridge would continue to serve appellee as a passage between his premises, and that by reason of the wrongful closing of said

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

passage he has been damaged in the sum of $4,000.

Appellant answered by general demurrer, numerous special exceptions, general denial, and specially pleaded that it is a common carrier, and it and its predecessors had maintained and operated, since 1886, the railway across appellant's land, and that its right of way, 100 feet wide, was acquired by its predecessors from appellee by warranty deed; that, in constructing the railway track, the wooden bridge was erected over a drain so as not to obstruct the flow of the water; that, by experience, railroads have learned that a concrete culvert is much safer and more durable and more economical than wooden structures, and the policy of substituting concrete for wooden culverts has been adopted where possible; that its paramount duty is to make its track as safe and secure as human skill, in the exercise of the highest degree of care, can do, for which purpose, and no other, the wooden bridge or culvert was removed and the concrete substituted therefor, and an opening was left 4 feet wide and 6 feet high for water to pass through, and it exercised the highest degree of care to make its track safe for the transportation of human beings; that the wooden culvert or bridge was not constructed as a crossing for man or beast, but was left for the purpose of permitting the natural flow of water, and, while appellee and his stock may have used the space for a passage, said use did not interfere with the operation of the railroad until 1923, when, for the purpose of making its track safe, it was replaced with a concrete culvert; that any use of the space under the bridge was subject and subordinate to appellant's right and duty, with which appellee has no right to interfere, and would be contrary to public policy, to prevent the discharge of its duty or allow damages because thereof, and, inasmuch as appellant is a public highway, appellee could acquire no right by prescription which would prevent appellant from discharging its paramount duty to the public.

Appellant denied any adverse possession or prescriptive right in appellee, denied that the way under the bridge was the only way for appellee to go from one part of his inclosure to the other, and denied that the passage under the bridge was a way of necessity, and alleged that, at the time the railroad was constructed, a farm crossing with gates was erected across the track, which still is maintained as a farm crossing, and in addition thereto there are two wooden trestles of such span as to prevent substituting culverts for them, one of which has been obstructed by appellant.

Appellant further alleges that in September, 1899, the appellee and his wife, for a valuable consideration, executed a warranty deed to its predecessors, by which they conveyed a strip of land 100 feet in width through and across the land patented to R. C. Thorne, which is a part of the farm over which the railway runs, and that appellant, prior to institution of this suit, acquired all the title of its predecessors, and that the culvert in question is situated on the right of way conveyed by plaintiff and his wife as aforesaid.

In response to the one issue submitted by the court, the jury answered that appellee had been damaged by the removal of the wooden culvert, and replacing it with a concrete culvert, in the sum of $500, for which amount judgment was rendered.

The appellant requested the court to give a peremptory instruction in its behalf, which was refused, and, by proper assignments, assails the action of the court, because the evidence, without conflict, shows that the bridge in question, and the ground upon which it was erected, including the drainway under the bridge, was its property, and is and had been for 30 years in the actual, peaceable, and adverse possession and use of appellant and those whose title it has; that appellee's use of the passage under the bridge was permissive, and he had not acquired any right by prescription; that such passageway was not a way of necessity to enable appellee to go from one part of his inclosure to the other; and the the wooden bridge was removed because it had become dangerous, and replaced with a safer and more economical structure in discharge of the paramount duty of appellant to the public.

In 1886 appellee gave to the Gainesville, Henrietta & Western Railway Company, across his land of approximately 300 acres, composed of portions of the R. C. Thorne, A. C. Davis, and E. S. Singletary surveys, a strip 100 feet wide, and conveyed to said company, by his warranty deed, said strip for use as a perpetual right of way, which strip is the present right of way owned and occupied by appellant.

At the request of the Gainesville, Henrietta & Western Railway Company to convey his wife's separate interest in the right of way across the Thorne tract, in 1899, appellee, together with his wife, executed such conveyance for a consideration of $150, and the bridge in question is located on said tract.

In building the railway across appellee's 300 acres in an easterly and westerly direction, his land was divided into two tracts, with something over 200 acres left on the north of the railway, and the remainder on the south. About 10 acres south of the railroad was in cultivation and the remainder in pasture. Over 100 acres of the land north of the railroad was in cultivation and about 100 acres in pasture. The farm was separated from the pasture by fences, and the railroad track separated the farm into two parts and the pasture into two parts, and,

while a large part of the pasture land has since been put into cultivation, no change in the location of the fences has been made that affects the determination of this case.

At the time the railroad was built on the right of way acquired from appellee, four bridges or trestles were erected; the one in controversy, and one a half mile to the west of 'it, both in the pasture, and two to the east, both in the old farm. These passageways under the bridges were left open for appellee to go from the parts of his premises on the north of the railroad to the parts on the south. The company fenced its right of way 5 or 6 years after the road was constructed, and put in one gated crossing in the pasture, but later closed it, and the passageway under the bridge east of the one in controversy, with the consent of appellee. The right of way fence turned in at the ends of the three other bridges and the way under them was left open, and especially the one in controversy, which was used by appellee continually as a passage for his stock, wagons, farm implements, etc., until December 23, 1923, when, by the substitution of the concrete culvert for the wooden bridge removed, the passage was obstructed to the extent that nothing but small animals can pass. Large stock, farm implements, and wagons cannot go under the concrete culvert.

Appellee's permanent water supply is situated on the south side of the railroad, as well as the house, barn, etc., on the 160 acres to which damage is sought, and his horses, mules, and large cattle have no way to go from the north to the south, and there is no passage for wagons, farm implements, etc., on the inclosure of said 160 acres.

About the time the right of way was fenced, appellant built a grade crossing over its track 765 feet east of the underbridge passage in question, which was not serviceable in very wet weather, but is used as a crossing between the two portions of the old farm separated by the railroad, but for the part of appellee's land that was originally inclosed as a pasture, a considerable portion of which has since been put in cultivation, there is no passage from the north to the south, and has not been for several years, except the roadway under the bridge in controversy.

Appellee used the way from the date of the construction of the railway for his farm implements, wagons, farm produce, etc., ran cattle, mules, and horses on the pasture, and after a large portion of the pasture lands was put in cultivation, when the crops were harvested, put the cultivated lands in with the grazing lands, as one pasture, and he and his stock went under the wooden bridge until the concrete culvert was substituted therefor.

It was necessary for the safety of the public and the economy of appellant to replace the wooden bridge with the culvert. An opening in the culvert 3x4 feet would have been sufficient for drainage purposes, but it was made 4x6 feet to allow cattle to pass, because it was safer to keep cattle off of a graded crossing. The opening in the concrete culvert was not left large enough for horses, mules, and vehicles, because the expense was greater than would be justified. The expense of the culvert as constructed was $1,500; as appellee wanted it, the expense would have been $2,000 more. The underpassage was an old road used by appellee before the railroad came, and had been used by him continuously as a roadway between the two parts of his premises since the separation thereof by the railroad. There is no other passageway on the 160-acre tract to which damage is sought, and he testifies that the passage was necessary to the general use of the premises, he made no demand for another crossing, but protested the closing of the underroadway in controversy.

Appellee does not seriously contend that his recovery can be sustained under any right acquired by him by prescription, the pleading of limitation being insufficient; he admits the duty of appellant to reconstruct the bridge, in the exercise of that high degree of care required of it for safety, but maintains that the passage was a way of necessity, and a proper construction of the culvert would have protected his rights, and the obstruction of the passage entitles him to damages.

[1] No reservation was made for crossings in either of the deeds by which the right of way was granted to appellant's predecessors. The land was conveyed for use as a right of way, and, while appellant did not acquire the fee-simple title (Right of Way Oil Co. et al. v. Gladys City Oil, Gas & Mfg. Co. et al., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. [N. S.] 268), it did acquire a perpetual way for the purpose of constructing, operating, and maintaining the railroad.

[2] A way of necessity is reserved by implication to the grantor if he conveys land surrounding land retained by him, provided his only access thereto is through the granted premises. Alley v. Carleton, 29 Tex. 74, 94 Am. Dec. 260, "Such a way is not created by necessity, but always originates in some grant or change of ownership to which it is attached by construction as a necessary incident presumed to be intended by the parties." Thompson on Real Property, vol. 1, par. 488.

Associate Justice Gaines, in Railway v. Rowland, 70 Tex. 301, 7 S. W. 718, says:

"It is elementary law that a vendor, who conveys to another land which is surrounded by the vendor's other land, impliedly grants a right of way over the land which is not conveyed (Washburne on Easements, 233), and it is held that 'the same rule applies when the grantor conveys land surrounding a parcel retained by him' (Brigham v. Smith, 4 Gray, 297; Seymour v. Lewis, 13 N. J. Eq. 444). This

is upon the doctrine that the grantor impliedly reserves a way of necessity over the premises conveyed, and the principle applies with equal force to the owner of a farm who grants a right of way through his inclosure to a railroad company or from whom the right of way is legally condemned for such a purpose. From the very nature of the transaction it is not to be presumed that the owner in the first case intended, by his grant, to cut off access from one part of his inclosure to another, or in the second, that the Legislature in authorizing the condemnation intended to bring about such a result. Railroad v. Bost, 2 Will. Condensed App. Cases, § 386."

This announcement of the law is sustained by numerous authorities. Kendall v. C., R. I. & G. R. Co. (Tex. Civ. App.) 95 S. W. 759; M., K. & T. Ry. Co. v. Chenault, 24 Tex. Civ. App. 481, 60 S. W. 55; Ritchey v. Welsh, 149 Ind. 214, 48 N. E. 1031, 40 L. R. A. 105; N. Y. & N. E. R. Co. v. Board of Railroad Commission, 162 Mass. 81, 38 N. E. 27; Hardy v. A.-& V. Ry. Co, 73 Miss. 719, 19 So. 661.

[3] It is true in Railway v. Rowland, supra, the Supreme Court held that article 6486, Vernon's Sayles' Ann. Civ. St., could not be enforced against a railroad that had acquired title to its right of way and fenced its tracks before the act of March 23, 1887, became effective, but this ruling is based on the presumption that, in the acquisition of its right of way, the company paid such a consideration therefor as would compensate the grantor for the expense of building and maintaining his own crossings. The record in this case discloses that the first conveyance by appellee to the predecessors of appellant was made in 1886, but it is also uncontroverted that the conveyance was a gift or donation, and that appellee received no consideration for the right of way across his land, except such benefits as the community in common generally received (article 6521, Vernon's Sayles' Civ. St.), and the deed made by appellee and his wife in 1899, as is apparent, was made after the act of 1887 was passed and became effective. Therefore appellant would be subject to the provisions of article 6486 of Vernon's Sayles' Civ. St., which requires railroad companies to make openings or crossings through their right of way fence and over their roadbed "every 1½ miles thereof: Provided, that, if such fence shall divide any inclosure, that at least one opening shall be made in said fence within such inclosure."

[4] The courts agree that, under certain circumstances, the right to a way of necessity exists, but they are not in harmony as to the degree of necessity required. To maintain a right to a way of necessity over the land of a stranger, the better rule seems to be that the necessity must be absolute, but when, as in the instant case, the holder of the dominant estate seeks to enforce his right to a way of necessity over the servient estate, the rule of reasonable, rather than absolute, necessity controls. Paine v. Chandler, 134 N. Y. 385, 32 N. E. 18, 19 L. R. A. 99; Powers v. Heffernan, 233 Ill. 597, 84 N. E. 661, 16 L. R. A. (N. S.) 523, 122 Am. St. Rep. 199; German Savings & Loan Co. v. Gordon, 54 Or. 147, 102 P. 736, 26 L. R. A. (N. S.) 331; Goodall v. Godfrey, 53 Vt. 219, 38 Am. Rep. 671; Miller v. Skaggs, 79 W. Va. 645, 91 S. E. 536, Ann. Cas. 1918D, 929; Davis v. Fortenberry, 114 Miss. 294, 75 So. 119; Thompson on Real Property, pars. 496, 497; Wiese v. Thien, 279 Mo. 524, 214 S. W. 853, 5 A. L. R. 1552; 21 R. C. L. p. 1218.

[5] If the party asserting his right to a way of necessity is the holder of the dominant estate, the rule of reasonable, rather than absolute, necessity has been adopted by the courts of our own state. In Railway v. Rowland, supra, Judge Gaines says:

"In the first place, we are of opinion that the owner of inclosed land, who has granted the right of way to a railway company by deed, must be held entitled to such crossings over the railroad track as are reasonably necessary for the use of the premises inclosed."

In Railway v. Ellis, 70 Tex. 307, 7 S. W. 722, the same eminent judge, referring to Railway v. Rowland, supra, says:

"We are of opinion that the principles laid down in the opinion in the former case apply to the case before us. We there determined that the owner of inclosed land who grants to a railway company a right of way through his inclosure, reserves a right to such ways over the track as are reasonably necessary to the use of his property."

In the case of Howell v. Estes, 71 Tex. 690, 12 S. W. 62, the testator had built two houses on adjacent lots two stories high, with a common partition wall, and the upper rooms to each were reached by one stairway entirely in one of the buildings, but attached to the division wall. The building containing the stairway was devised to the testator's son and the other to his daughter. In a controversy as to the right of the use of the stairway, the same distinguished jurist says:

"We think the weight of authority sustains the proposition that, if an improvement contructed over, under or upon one parcel of land for the convenient use and enjoyment of another contiguous parcel by the owner of both be open and usable and permanent in its character, and of such a nature as does not require the act of man to perfect or indicate its use, and the owner alienates the latter, the use of such improvement will pass as an easement, although it may not be absolutely necessary to the enjoyment of the estate conveyed. Lampman v. Milks, 21 N. Y. 505, and authorities cited; Ewart v. Cochrane, 4 Macq. 123;

Kieffer v. Imhoff, 26 Pa. St. 438; Kilgour v. Ashcom, 5 Har. & J. 82; Seymour v. Lewis, 13 N. J. Eq. 439; Elliott v. Rhett, 5 Rich. Law, 405. See, also, Freeman's notes to same case, 57 Am. Dec. 762, and authorities cited."

In Kendall v, C., R. I. & G., R. Co. (Tex. Civ. App.) 95 S. W. 757, Judge Bookhout holds that—

"Where the owner of inclosed land has granted the right of way to a railway company by deed, he is entitled to such crossings over the roadbed or railway track as are reasonably necessary for the use of the inclosed premises."

[6] The location of a way of necessity in the first instance may be made by the grantor. If he fails to do so, the grantee may select such way. "If neither designate it, but a way is used by common consent, such use locates the way and it cannot thereafter be changed without the consent of both parties." Thompson on Real Property, vol. 1, par. 501, and authorities cited.

[7] If a person is entitled to a way of necessity over land owned by another, he cannot be deprived of his right by offering him another way over land owned either by himself or by the other. Ritchey et al. v. Welsh, 149 Ind. 214, 48 N. E. 1031, 40 L. R. A. 105; Nugent v. Watkins, 124 Ga. 150, 52 S. E. 158.

[8] It was an issue of fact as to whether such necessity existed as would entitle appellee to a passage, to be determined by all the facts and circumstances in the record. 21 R. C. L. p. 1218, par. 13.

[9] After the wood bridge was removed and the concrete culvert erected, there was no opening or crossing on the railroad by which appellee, with his wagons, farm implements, etc., or by which grown stock could pass from the south side of the 160-acre inclosure to the north side thereof. For him to reach the part of the farm on the north side of the inclosure required that he travel approximately 1½ miles farther after the concrete culvert was built, and for him to avail himself of the two inclosures, the one on the north and the one on the south of the railroad, for grazing purposes, the crossing was reasonably necessary, probably a strict necessity.

[10] No issue was submitted to the jury, and none requested, as to whether or not the passageway was necessary to appellee for the general use and enjoyment of the premises, and the finding of the trial judge, there being evidence to sustain it, is conclusive on this court. Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132; Stevens v. Cobern et al., 109 Tex. 574, 213 S. W. 925; Hughes et al. v. Hughes et al. (Tex. Com. App.) 221 S. W. 970.

No error is urged as to the amount of the verdict found by the jury.

Finding no reversible error in the record, the judgment is affirmed.