Opinion filed February 8, 2007


















 
 
 The court on this day, July 19, 2007, has withdrawn this opinion and
 judgment dated February 8, 2007, and substituted the opinion and judgment
 dated July 19, 2007.
 
 







 
 
  
 
 




Opinion filed February 8, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00064-CV 

                                                     __________

 

                                       STATE
OF TEXAS,
Appellant   

 

                                                             V.

 

            JOHN
S. BEESON, TRUSTEE, AS SUCCESSOR-IN-INTEREST 

             TO RICHARD
C. BUMSTEAD AND SYLVIA M. BUMSTEAD, 

                        JOHN
BEESON, AND PAUL SIROTA, Appellees 

 



 

                                         On
Appeal from the 157th District Court

 

                                                          Harris County,
Texas

 

                                              Trial
Court Cause No. 2002-22,286

 



 

                                                                   O
P I N I O N

 








This appeal involves an effort by landowners to
establish an easement across an abandoned railroad right-of-way that adjoins
their property.   The landowners contend
that they possess an easement by necessity or, alternatively, a prescriptive
easement, to cross the railroad right-of-way in order to access a public road
that runs along the opposite side of the railroad right-of-way.  After considering the parties= competing motions for summary
judgment, the trial court determined that the landowners established both of
their easement claims as a matter of law. 
We reverse and render.

                                                               Background
Facts

Appellees own two small, neighboring tracts of
real property that lie immediately north of the railroad right-of-way.  A public highway known as A
Old Katy Road
@
runs along the corresponding southern boundary of the railroad
right-of-way.  Accordingly, the State of Texas owns the property
located on the other side of the railroad right-of-way.[1]  

The parties=
respective tracts have a common source of title; a 655-acre tract acquired by
Max and Eliza Roy prior to 1893.  The
Missouri Kansas & Texas Railway Company of Texas
condemned a railroad right-of-way across the original Roy tract in a judgment entered on January
18, 1893.[2]  The area condemned by the railroad consisted
of a 100-feet-wide right-of-way running east/west across the northern portion
of the Roys= large tract.   The railroad easement had the effect of
bisecting the Roy
tract into two tracts: a relatively narrow strip of land lying north of the
railroad right-of-way and a large tract of land lying south of the
right-of-way.  A very narrow strip of the
original Roy
tract located along the northern line of the railroad right-of-way constitutes
the southernmost portion of appellees=
two tracts. With respect to the land lying south of the right-of-way, the Roys
conveyed a 7.8-acre strip of land running parallel to the railroad right-of-way
to Harris County on March 30, 1896.  This
property has been utilized as Old
 Katy Road for many years.    








From 1893 until the 1990=s,
the right-of-way was continuously used for railroad purposes.  In 1992, the State purchased the railroad
right-of-way from the successor-in-interest of the original railroad company.[3]  Pursuant to the terms of the purchase
agreement between the railroad company and the State, the railroad company
abandoned its use of the railroad right-of-way in 1998.  This appeal concerns the use of the
right-of-way by the adjoining property owners after its abandonment by the
railroad company.

The property descriptions contained in the
conveying instruments for the tracts located north and south of the railroad right-of-way
do not include the property located within the right-of-way.  As noted by the Texas Supreme Court in State
v. Fuller, 407 S.W.2d 215, 218 (Tex. 1966), a deed to land abutting a railroad
right-of-way conveys title to the center of the right-of-way unless the
contrary intention is expressed in the conveyance instrument.[4]  Upon abandonment of the right-of-way, the
adjoining landowners=
title to their respective halves of the right-of-way ripen into absolute
ownership.  Id. 
The parties recognize the applicability of this principle by agreeing
that, upon the railroad company=s
abandonment of the right-of-way, appellees own the northern half of the
right-of-way and the State owns the southern half of the right-of-way.  Since the parties acknowledge appellees= ownership of the northern half of the
right-of-way, the issues in this appeal focus on  appellees=
right to cross the southern half of the right-of-way.  

Appellees=
property consists of two tracts that are 7.0065 acres and 5.7923 acres in
size.  Their two tracts are separated by
a private road know as “
Walne
 Street
.”  Walne Street is a
paved road that runs across the right-of-way and intersects with Old Katy Road
.[5]  Appellees used Walne Street to access Old Katy Road prior to the railroad=s abandonment of the right-of-way.  They contend that they possess an easement to
continue using Walne Street
to access Old Katy Road
.  Appellees base their claim of an easement by
necessity on the contention that the Roys
reserved the right to cross the railroad right-of-way in order to access both
portions of their property lying north and south of the right-of-way.  Appellees base their prescriptive easement
claim on the contention that Walne
 Street has been used by them to access Old Katy Road at
least since 1975.   The trial court
decreed in its final judgment that appellees are the owners of an easement for
the purpose of providing them access to the public road system across the
portion of Walne Street
which lies on the southern half of the railroad right-of-way.








                                                              Standard
of Review

When competing motions for summary judgment are
filed, and one is granted and the other denied, the reviewing court must review
the summary judgment evidence presented by both sides and determine all
questions presented.  Comm’rs Court of
Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). 
Appellees filed a traditional motion for summary judgment, while the
State sought summary judgment on both traditional and no-evidence grounds.  With respect to a traditional summary
judgment motion brought under Tex. R.
Civ. P. 166a(c), the moving party has the burden of showing that there
is no genuine issue as to any material fact and that it is entitled to judgment
as a matter of law.  Provident Life
and Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215-16 (Tex. 2003). In reviewing a summary judgment,
we consider the evidence in the light most favorable to the nonmovant and
resolve any doubts in the nonmovant=s
favor. Nixon v. Mr. Prop. Mgmt. Co ., 690 S.W.2d 546, 548-49 (Tex. 1985).  Under Tex.
R. Civ. P. 166a(i), a party may move for summary judgment on the ground
that there is no evidence of one or more essential elements of a claim or
defense on which an adverse party would have the burden of proof at trial.  Unless the respondent produces summary
judgment evidence raising a genuine issue of material fact, the court must
grant the motion.  Rule 166a(i); Johnson
v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).

                                                                 Issues
on Appeal

The State raises seventeen issues on appeal.  Its first, second, third, fourth, fifth,
sixth, fifteenth, and sixteenth issues deal solely with appellees= claim of an easement by
necessity.  Its seventh, eighth, ninth,
tenth, eleventh, twelfth, thirteenth, and fourteenth issues deal solely with
appellees=
prescriptive easement claim.  The State=s seventeenth issue concerns the trial
court=s rulings
on the State=s
objections to appellees=
summary judgment evidence.

                                                            Easement
by Necessity








Appellees contend that the Roys reserved an easement by implication to
cross the railroad right-of-way.  They
base this contention on the allegation that an easement across the right-of-way
was necessary for the Roys
to access both portions of their property that were bisected by the
right-of-way.[6]  A party claiming an easement by necessity
exists must demonstrate (1) unity of ownership prior to the separation, (2)
access must be a necessity and not a mere convenience, and (3) the necessity
must exist at the time of severance of the two estates.  Koonce v. Brite Estate, 663 S.W.2d
451, 452 (Tex.
1984).[7]  The party claiming an easement by necessity
has the burden of proving his entitlement to same.  See Miller v. Elliott, 94 S.W.3d 38, 43
(Tex. App.CTyler
2002, pet. denied).            In its first and second issues, the
State contends that there is no evidence to support the Anecessity@ element.  The degree of Anecessity@ required to support a finding of an
implied easement by reservation is strict necessity.  Drye v. Eagle Rock Ranch, Inc., 364
S.W.2d 196, 208 (Tex.
1962). If a landowner can access his property by other means, he cannot claim a
right by implication to pass over the land of another to reach his
property.  Duff v. Matthews, 311
S.W.2d 637, 640-41 (Tex.  1958). 
The burden is on the party seeking to establish an implied reservation
of a roadway to exclude, by proof, the possibility of another way of ingress
and egress except the way claimed.  Id.

Easements by necessity are temporary because their existence is
dependent on the necessity that created them. 
Bains v. Parker, 182 S.W.2d 397, 399 (Tex. 1944). 
Easements by necessity terminate upon the cessation of the
necessity.  Id. 
Accordingly, appellees were required to show that the necessity, if any,
which existed at the time of the severance of the estates in 1893 existed until
the time of trial.  See Miller, 94
S.W.3d at 44.

Appellees do not have any evidence of the manner
in which the Roys
used the property at the time that the railroad right-of-way came into
existence in 1893.  Instead, they rely
upon the general allegation that the Roys
would have needed to cross the right-of-way to access the northern strip of
their property that was cut off from the remainder of their large tract by the
right-of-way. They cite

Missouri-Kanasas-Texas Ry. Co. of Texas v. Cunningham, 273
S.W. 697, 699-701 (Tex. Civ. App.CAmarillo
1925, no writ), as a specific example of a Texas court recognizing the
existence of an easement by necessity when a railroad right-of-way severs an
enclosed tract of property.  The court
held in Cunningham that an easement is reserved by the landowner by
implication to cross the right-of-way to access both portions of his enclosed
property when his only access to both portions is across the right-of-way.  Id.  








While the holding in Cunningham would
appear to be applicable to this appeal in theory, the evidence offered in
support of the easement in Cunningham differs greatly from the evidence which
exists in this appeal.  The claimant in Cunningham
was the original owner of the tract of property bisected by the railroad
right-of-way.  Id. at 698.  He submitted evidence of his actual use of
his tracts of property since the time of the severance and his manner of
accessing one tract from the other by using a passageway under a wooden bridge
that supported the railroad tract since its construction.  Id.

Appellees base their claim of an easement by
necessity on the assumption that the Roys
would have needed to cross the right-of-way to access a thin, 2.5-acre
wedge-shaped tract of their original tract. 
The southernmost portion of appellees=
two tracts are derived from this 2.5-acre tract.  However, appellees have no evidence of the
manner in which the Roys
may have actually used the 2.5-acre tract. 
In the absence of evidence of actual use, there is no evidence that the Roys had a need to access
the 2.5-acre tract after the railroad crossed their property.  There is no evidence that the Roys had a necessity to
cross the right-of-way at a point located along the southern boundary lines of
appellees=
tracts.  Specifically, the 2.5-acre tract
was approximately 2,900 lineal feet in length along the northern line of the
right-of-way.  The southern boundary of
appellees= two
tracts (including Walne Street
)
only occupied approximately 1,200 feet of the 2.5-acre tract=s linear run along the
right-of-way.  Appellees have no evidence
that excludes the possibility that the Roys
used some other point along the 2.5-acre=s
tract linear run to cross the right-of-way. 
Furthermore, the Roys
possessed an additional 52.82-acre tract located along the northern line of the
right-of-way that they could have used to access the 2.5-acre tract.[8]  Moreover, the Roys conveyed the 2.5-acre tract in
1924.  Appellees do not have any evidence
that the necessity which the Roys
may have possessed to access the 2.5-acre tract in 1893 continued to exist
after its conveyance.  








The State=s
first and second issues are sustained. 
We do not reach the State=s
remaining issues pertaining to appellees=
claim of an easement by necessity (Issues Nos. Three, Four, Five, Six, Fifteen,
and Sixteen) in light of our determination that there is no evidence to support
the element of necessity.  See Tex. R. App. P. 47.1.  

                                                            Prescriptive
Easement

A person acquires a prescriptive easement by the
open, notorious, continuous, exclusive, and adverse use of someone else=s land for ten years.  See Brooks v. Jones, 578 S.W.2d 669,
673 (Tex.
1979); Mack v. Landry, 22 S.W.3d 524, 531 (Tex. App.CHouston [14th Dist.] 2000, no pet.); Stallman
v. Newman, 9 S.W.3d 243, 248 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied). 
Appellees rely upon the following affidavit testimony of John S. Beeson
to support its prescriptive easement claim: 


1.         I
am personally familiar with the 7.0065-acre and 5.7923-acre tracts of land that
are involved in this lawsuit and the location of the road known as Walne
Street, a 30-foot-wide road that runs in a north-south direction between the
7.0065-acre and 5.7923-acre tracts.

 

2.         At
least since 1975, the 7.0065-acre and 5.7923-acre tracts, as well as a (sic)
properties located to the north of these tracts, have accessed the public highway
system across the 100-foot-wide railroad right-of-way located to the south of
these tracts using Walne Street
,
which is a private road paved over the railroad right-of-way.  Immediately south of the railroad
right-of-way is the public thoroughfare known as Old Katy Road
.  These properties do not have any other access
to the public highway system except across the railroad right-of-way at this
location to Old Katy Road
.  According to my research, this private road
crossing at Walne Street
was not subject to a written crossing agreement with the railroad.

 

Thus, appellees contend that they possess a prescriptive easement
to cross the right-of-way by virtue of Walne Street
=s
existence at least since 1975.








In its seventh and eighth issues, the State
contends that appellees=
prescriptive easement claim is barred by Tex.
Civ. Prac. & Rem. Code Ann. '16.030(b)
(Vernon 2002).  This statute provides
that “[a] person may not acquire through adverse possession any right or title
to real property dedicated to public use.” 
The State formally dedicated the right-of-way for highway purposes upon
its purchase from the railroad in 1992. 
Appellees contend the statute does not bar their claim because their
prescriptive easement ripened into existence prior to 1992.  Even if we assume that  a prescriptive easement vested in favor of
appellees to cross the railroad right-of-way prior to its dedication by the
State to public use in 1992, we conclude that it did not run against the State=s interest in the property prior to the
railroad=s
abandonment of the right-of-way.

 As noted by
the court in Millmen Union v. Missouri-Kansas-Texas R. Co. of Texas, 253
S.W.2d 450, 454 (Tex. Civ. App.CWaco
1952, writ ref. n.r.e.), “A railroad company has the exclusive use of the
surface of the land on which its right of way is located.”  Since the railroad had the exclusive use of
the right-of-way, the State=s
interests in the right-of-way during the period of time that it was used for
railroad purposes was similar to that of a remainderman to a life estate in
that the State did not have a right to possess the right-of-way during the
period of its operation.   This court
rejected the possibility of a remainderman=s
interest being subject to adverse possession during the term of the life
tenancy in Hensley v. Conway, 29 S.W.2d 416, 417-18 (Tex. Civ. App.CEastland 1930, no writ).  The court reasoned in Hensley that
limitations does not accrue against the remainderman=s
interest while the life tenant remains alive because the remainderman does not
have a possessory interest that would allow him to institute a trespass to try
title action seeking the ouster of the trespasser.  Id.  

Our reasoning in Hensley is applicable to
the facts in this appeal.  It would be
unreasonable for the State=s
right to possess the property in the future to be impaired by a prescriptive
easement based upon acts occurring prior to the vesting of the State=s possessory right.   To hold otherwise would have required the
State to institute an action to prevent appellees from crossing the
right-of-way even though it was in the exclusive possession of the
railroad.  Accordingly, while appellees
may have established a prescriptive easement against the railroad=s right to possess the right-of-way,
their adverse use was ineffectual against the State=s
future right to possess the property. 
Any  prescriptive easement that
appellees possessed against the railroad terminated when the railroad abandoned
the property in 1998.   Thus, the State=s dedication of the right-of-way to
public use in 1992 prevented the State=s
interest in the property from being impaired by a prescriptive easement after
the railroad abandoned the right-of-way. 









We sustain the State=s
seventh and eighth issues.  We do not reach
the State=s
remaining issues pertaining to appellees=
claim of a prescriptive easement (Issues Nos. Nine, Ten, Eleven, Twelve,
Thirteen, and Fourteen) in light of  our
determination that appellees=
claim is barred by statute.  See  Rule 47.1.  We also do not consider the State=s seventeenth issue concerning the
trial court=s rulings
on the State=s
objections to appellees=
summary judgment evidence because it is not necessary to the final disposition
of this appeal.  Id.

                                                            This
Court=s
Judgment

The judgment of the trial court is reversed, and
judgment is rendered in favor of the State. 


 

TERRY McCALL

JUSTICE

 

February 8, 2007

Panel
consists of: Wright, C.J.,

McCall,
J., and Strange, J.

 

 











[1]The parties acknowledge that the State owns Old Katy Road by virtue
of its status as a public highway.





[2]The condemnation judgment provided in pertinent part as
follows: AIt is further ordered adjudged and decreed that the
land and premises described in the plaintiff=s
petition herein be and the same is hereby condemned and adjudged to the
Missouri Kansas and Texas Railway Company of Texas for its use and benefit as a
right-of-way for its railway, and such right thereto is hereby vested in said
Company.@





[3]The portion of the railroad right-of-way lying south of
appellees= tracts of property was included in a purchase by the
State of several miles of railroad right-of-way.  





[4]In many respects, the facts in this case are similar to
those addressed in Fuller.





[5]There is only one reference to Walne Street in the applicable deed
records.  The description of Walne Street in
this reference indicates that it runs between appellees= two tracts of property.  However, this description does not indicate
that Walne Street
extends across the railroad right-of-way to Old Katy Road
.  The description of Walne Street contained within the deed
records is inconsistent with the actual course 
of the asphalt road which separates appellees= two tracts. 
Photographs in the summary judgment record illustrate that the road
extends across the railroad right-of-way to Old Katy Road
.  





[6]A tract of land burdened by an easement is known as the
servient estate, while the tract of land benefitted by the easement is referred
to as the dominant estate. Daniel v. Fox, 917 S.W.2d 106, 110 (Tex. App.C San Antonio 1996, writ denied).  If the dominant estate is retained by the
grantor and the servient estate is conveyed, an implied easement is said to
have been Areserved.@ Id.





[7]Appellees do not base their claim of an easement upon
an established route in existence at the time the railroad right-of-way was
created. An easement of this type is typically referred to as an implied
easement.  See Daniel, 917 S.W.2d
at 110.   To establish an implied
easement, a plaintiff must establish that (1) there was a unity of ownership
between the dominant and servient estates and that the use was (2) apparent,
(3) in existence at the time of the grant, (4) permanent, (5) continuous, and
(6) reasonably necessary to the enjoyment of the premises granted.  Id.  Since appellees are claiming an easement by
necessity, they are not required to show the existence of a route that was
apparent, continuous, and permanent at the time of the severance.  Id.
at 111.





[8]The 52.82-acre tract was located east of the 2.5-acre
tract along the northern line of the railroad right-of-way.  At the time of the right-of-way=s acquisition in 1893, these two tracts were separated
by a pre-existing railroad right-of-way that intersected with the right-of-way
at issue in this appeal.